Louis Husti et al. *v.* Zuckerman Property Enterprises, Ltd., et al.
(12689)

Peters, C. J., Healey, Dannehy, Callahan and Tamborra, Js.

Argued February 14—decision released May 13, 1986

*Alan Neigher,* with whom, on the brief, was *Judith M. Truitt,* for the appellants (defendants).

*John H. Welch, Jr.,* with whom were *Jean Maguire* and *John Bashar,* for the appellees (plaintiffs).

PETERS, C. J. The issue in this case is whether enforcement of a zoning regulation prohibiting the use of a country club's property for outdoor concerts or theatrical performances violates rights to free speech protected by the federal and the state constitutions. The named plaintiff, Louis Husti, the acting zoning enforcement officer of the city of Shelton, and the planning and zoning commission of the city of Shelton sought injunctive and other equitable relief to compel the defendants, Zuckerman Property Enterprises, Ltd., and others doing business as the Pinecrest Country Club,[1] to comply with an order of the zoning enforcement officer concerning the use of the defendants' property. That order, issued in 1979, was upheld in a decision of the Shelton zoning board of appeals. The defendants' appeal to the Superior Court, *Glass, J.*, was, after a hearing, dismissed and this court denied certification. The trial court, *Rottman, J.*, issued the injunction and the defendants have appealed.

The underlying facts are established by the memorandum of decision filed by Judge Glass in the original appeal. The defendants are the owners of a country club located in a part of Shelton that has been zoned as an R-1 residential zone since 1955. In 1970, the management and operation of the country club was taken over by the defendants Robert and Jonathan Zuckerman. They improved the facilities and, in 1975, decided to book outdoor musical events at the club. The concerts were widely advertised, and tickets were sold at the entrance to the club premises. Musical groups performed on a stage with large amplifiers stacked on top or alongside of each other on the stage. The concerts, some of which were held in the early evening and continued into the night, drew thousands of people to the

---

[1] The other named defendants were Robert Zuckerman, Jonathan Zuckerman, Shelton Yacht and Cabana Club, Inc., Lascal, Inc., and First River Road Corporation.

country club. The concerts resulted in considerable traffic congestion and the noise they generated could be heard at great distances.

The Shelton planning and zoning commission concluded, at a special meeting on April 20, 1979, that the country club property "is subject to an existing nonconforming use for picnics and outings only, and does not include concerts or other activities and uses listed in Public Acts 1978, No. 78-202; said activities not being permitted by the current zoning and in violation of Section 41.4 of the zoning regulations." On May 21, 1979, the Shelton zoning enforcement officer issued an order to the defendants that: "You are hereby ordered to cease the use of the property for concerts and theatrical performances and to take such action as may be necessary to cancel any scheduled performances or activities which would be in violation of the Zoning Regulations." The zoning order was upheld by the zoning board of appeals, and by the Superior Court. This court denied certification on September 23, 1980. The order therefore definitively establishes that the activities therein described are beyond the scope of any existing nonconforming use.

Despite the order, the defendants continued to offer live entertainment at the country club. The plaintiffs unsuccessfully sought a temporary injunction prohibiting further concerts and theatrical performances, and the defendants unsuccessfully sought an immediate injunction against the plaintiffs in federal court. Both parties then pursued their claims for permanent injunctions in the trial court before Judge Rottman, who temporarily enjoined the defendants while the claims were pending.

In the hearing before Judge Rottman, the plaintiffs sought enforcement of the regulations whose validity had been established by Judge Glass. The trial court

ruled that the plaintiffs were entitled to equitable relief to enforce the zoning regulations without a showing of irreparable harm. General Statutes § 8-12; *Johnson* v. *Murzyn,* 1 Conn. App. 176, 180, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). That matter is no longer at issue.

The crucial issue before Judge Rottman, and this court, is a constitutional question concerning federal and state constitutional guarantees of free speech. The defendants claim that the right of free speech encompasses live entertainment such as the concerts that they have staged at the country club, and that Shelton's zoning regulations unconstitutionally infringe on their right of free speech. The trial court upheld the validity of the zoning regulations. It concluded that while the Shelton zoning regulations forbade outdoor live entertainment as a principal use, it permitted such concerts in some zones as an accessory use. It determined that the adoption of the zoning regulations was the result of a substantial concern for adequate land use regulation and that the regulations were not intended to impair free speech in general or the content of a protected form of expression in particular. The court found the zoning regulations to be content-neutral, and a valid "time, place and manner" restriction. It held that the regulations had been narrowly drawn and that they were no more extensive than necessary to serve legitimate zoning interests. On the basis of all of these considerations, the court concluded that "the application of the zoning regulations under the circumstances of this case to the Defendants' property is not unconstitutional."

I

The first issue that we must resolve is the defendants' claim of a violation of their federal first amendment right to free speech. This claim involves an inquiry

into the defendants' own constitutional rights and into the claimed facial invalidity of the Shelton zoning regulations. We do not find it persuasive.

A

In reviewing the defendants' federal claim, we first note that there is little question that local governments possess the constitutional authority to regulate the use of land. We have held on numerous occasions that zoning restrictions, so far as they reasonably promote public health, safety, and welfare without depriving landowners of all economically viable use of their property, are constitutional even though the effect of the restrictions may be to limit the exercise of private property rights. See, e.g., *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 151, 365 A.2d 387 (1976); *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 722–23, 184 A.2d 42 (1962); *Poneleit* v. *Dudas,* 141 Conn. 413, 417–18, 106 A.2d 479 (1954); see also *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926). When zoning law constricts the realm of permissible expression, however, we employ a heightened level of scrutiny to determine whether the law is valid under the first amendment to the United States constitution. The parties in this case agree that entertainment, including concerts and theatrical productions, is constitutionally protected speech that may be regulated only in certain circumstances and with sufficient justification. See *Schad* v. *Mount Ephraim,* 452 U.S. 61, 65, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981); *Doran* v. *Salem Inn, Inc.,* 422 U.S. 922, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975); *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975). We must decide whether constitutional justification exists in this case for Shelton's exclusion of outdoor entertainment from a residential area.

We begin our inquiry by observing that the Shelton zoning plan does not regulate speech on the basis of its content. The regulations prohibit all outdoor entertainment, regardless of its message, in the residential zone that contains the defendants' club. Nothing in the record indicates that the city government is using zoning to stifle expression that it deems distasteful. Instead, the zoning restriction represents an attempt by the zoning board to confine the presentation of outdoor concerts to sections of the city that are well suited to accommodate the secondary effects of such activities. See, e.g., *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 3069, 82 L. Ed. 2d 221 (1984).

The United States Supreme Court has recently held that a content-neutral zoning regulation that restricts the permissible time, place, and manner of protected speech is constitutional under the first amendment if the regulation "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton* v. *Playtime Theatres, Inc.*, 475 U.S. 41, 50, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986); see also *Clark* v. *Community for Creative Non-Violence*, supra; *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U.S. 789, 807, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); *Heffron* v. *International Society for Krishna Consciousness*, 452 U.S. 640, 649, 654, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981); *Friedson* v. *Westport*, 181 Conn. 230, 235–36, 435 A.2d 17 (1980). Our review of the trial court's findings, and of the underlying record convinces us that both criteria were satisfied in this case.

A city has undeniably important interests in protecting the character of its residential neighborhoods and in promoting the health, safety, and welfare of its citizens. See *Belle Terre* v. *Boraas*, 416 U.S. 1, 5–6, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974); *Berman* v.

*Parker,* 348 U.S. 26, 31–33, 75 S. Ct. 98, 99 L. Ed. 27 (1954). As Justice Marshall has observed, "[zoning] may indeed be the most essential function performed by local government, for it is one of the primary means by which we protect that sometimes difficult to define concept of quality of life." *Belle Terre* v. *Boraas,* supra, 13 (Marshall, J., dissenting). The trial court in this case reasonably concluded that performances at an outdoor amphitheater located in a residential area threatened the quality of life and the safety of the inhabitants of the neighborhood by causing noise, attracting crowds, and creating traffic congestion. These are precisely the kinds of dangers that zoning is meant to combat; see General Statutes § 8-2;[2] and that justify content-neutral regulation of the time, place, and manner of expression. See, e.g., *Clark* v. *Community for Creative Non-*

---

[2] "[General Statutes] Sec. 8-2. REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or use of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concen-

*Violence,* supra, 294–97; *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent,* supra, 804–809; *Kovacs* v. *Cooper,* 336 U.S 77, 86–87, 69 S. Ct. 448, 93 L. Ed. 513 (1949). Consequently, the trial court correctly found that the city had imposed restrictions on outdoor entertainment at Pinecrest in furtherance of substantial government interests.

The defendants claim that the presentation of concerts at Pinecrest did not deleteriously affect the surrounding neighborhood because industrial enterprises were located on nearby property that was zoned for commercial purposes. They contend that because the area was already, in effect, a quasi-business district, their use of Pinecrest was appropriate. We reject this argument. Judge Glass has held, in a separate proceed-

---

tration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality consistent with soil types, terrain and infrastructure capacity. Zoning regulations may be made with reasonable consideration for the protection of historic factors and for the protection of existing and potential public surface and ground drinking water supplies and may provide that proper provision be made for sedimentation control, and the control of erosion caused by wind or water. Such regulations may also encourage energy-efficient patterns of development, the use of solar and other renewable forms of energy, and energy conservation. The regulations may also provide for incentives for developers who use passive solar energy techniques, as defined in subsection (b) of section 8-25, in planning a residential subdivision development. The incentives may include, but not be limited to, cluster development, higher density development and performance standards for roads, sidewalks and underground facilities in the subdivision. Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Any city, town or borough which adopts the provisions of this chapter may, by vote of its legislative body, exempt municipal property from the regulations prescribed by the zoning commission of such city, town or borough; but unless it is so voted municipal property shall be subject to such regulations."

ing, that Shelton's zoning regulations do not permit the defendants to hold concerts at Pinecrest. His findings are conclusive in this proceeding. See *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Brockett* v. *Jensen,* 154 Conn. 328, 337, 225 A.2d 190 (1966); see also *Santora* v. *Miklus,* 199 Conn. 179, 188, 506 A.2d 549 (1986); *Department of Health Services* v. *CHRO,* 198 Conn. 479, 487–88, 503 A.2d 1151 (1986); *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 147, 496 A.2d 476 (1985). Accordingly, we do not here review the reasonableness of the classification of the neighborhood as residential. Our concern is whether the city had a substantial interest in protecting the residential community from potential adverse consequences of the presentation of outdoor concerts at Pinecrest. There is little question that it did.

The defendants further claim that even if Shelton did have a substantial interest in protecting the community, its means of pursuing that interest, the exclusion of outdoor concerts from the neighborhood, was unnecessarily restrictive. We disagree. Shelton's regulation serves to remove from residential neighborhoods some likely causes of threats to safety and tranquility. Arguably the city could have chosen to address these dangers specifically by limiting the decibel levels of concerts, limiting audience size, requiring the defendants to police their concerts, and imposing traffic restrictions. In light of the significant possibility that such measures would have been impractical, ineffective, and even counterproductive; see *Planning & Zoning Commission* v. *Zemel Bros., Inc.,* 29 Conn. Sup. 45, 270 A.2d 562, petition for review dismissed, 159 Conn. 638, 268 A.2d 248 (1970); we cannot say that the exclusion of concerts from a residential district was not sufficiently narrowly tailored to accommodate the city's substantial interests. See *Renton* v. *Playtime Theatres, Inc.,* supra, 53–54.

The second prong of the standard articulated in *Renton* requires that time, place, and manner restrictions on speech provide for reasonable alternative avenues of communication. An examination of the Shelton zoning regulations reveals that indoor entertainment is permitted as a primary use in certain zones, and that outdoor entertainment is permissible as an accessory use of property where outdoor entertainment is "customary with and related to a permitted use." Although the determination of the scope of accessory uses is, in the first instance, a matter for the Shelton zoning board, the trial court observed, and we agree, that the plain language of the regulations indicates that outdoor entertainment is a proper accessory use of property in certain sections of the city.[3] The defendants claim in a conclusory fashion that the Shelton zoning board would probably not allow outdoor entertainment as an accessory use of any property in the city. The defendants have made no attempt, however, to substantiate their allegations by seeking permission to hold concerts on property whose zoning classification would suppport such events as an accessory use. Consequently, they offer this court no basis on which to reject the trial court's interpretation of the regulations.

The defendants contend that the alternatives available in Shelton do not provide adequate avenues of communication because their concerts would not be profitable if held indoors or as an accessory use to properly classified land. The United States Supreme Court in *Renton* responded to a similar claim by noting that "although we have cautioned against the enactment

---

[3] For example, the Shelton zoning regulations permit, in one or more zones, theaters, assembly halls, hotels, restaurants, schools, colleges, membership clubs, recreation facilities, lodges, and community houses. The zoning board could reasonably classify live entertainment as an "accessory us[e] customary with and incidental to" any of these permitted uses. See Shelton Zoning Regulations Schedule A; see also *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 447, 418 A.2d 82 (1979).

of zoning regulations that have 'the effect of suppressing, or greatly restricting access to, lawful speech,' [*Young* v. *American Mini Theatres,* 427 U.S. 50, 71 n.35, 96 S. Ct. 2440, 49 L. Ed. 2d 310] (plurality opinion), [reh. denied, 429 U.S. 873, 97 S. Ct. 191, 50 L. Ed. 2d 155 (1976),] we have never suggested that the First Amendment compels the Government to ensure that . . . speech-related businesses . . . will be able to obtain sites at bargain prices." *Renton* v. *Playtime Theatres, Inc.,* supra, 54. We cannot conclude on this record that Shelton's zoning regulations effectively exclude concerts from the town. Since the regulations meet the requirements set out in *Renton,* they do not, as applied to the defendants, violate the first amendment.[4]

## B

The defendants also claim that Shelton's zoning regulations are, as a matter of federal law, unconstitutionally overbroad. They argue that even if the city may prohibit concerts at Pinecrest, the zoning regulations are so broadly written that they impinge upon the protected speech of others. We do not review this claim because, as the trial court held, the defendants lack standing to pursue it.

---

[4] The defendants also argue that Shelton's application of its zoning regulations violates the equal protection clause of the fourteenth amendment to the United States constitution. Citing a number of instances in which the city has permitted picnics at Pinecrest and outdoor entertainment in other sections of town, they claim that the city has discriminatorily enforced its zoning laws to ban rock concerts at Pinecrest. See *Yick Wo* v. *Hopkins,* 118 U.S. 356, 373–74, 6 S. Ct. 1064, 30 L. Ed. 220 (1886).

This contention finds no support in the record. The city permitted picnics at Pinecrest because, as Judge Glass held, Pinecrest's nonconforming use includes picnics. The other outdoor events referred to by the defendants were presented in sections of town that were not classified as residential districts. These events serve not as proof of a denial of equal protection, but as evidence that the zoning plan does provide opportunities to present outdoor entertainment in the city of Shelton.

Litigants are sometimes allowed to challenge the validity of laws on first amendment grounds where the law would be invalid as applied to others even if the law is constitutional as applied to the litigant. Courts permit overbreadth claims because "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Gooding* v. *Wilson,* 405 U.S. 518, 521, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972); see also *New York* v. *Ferber,* 458 U.S. 747, 772, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); *Schaumburg* v. *Citizens for a Better Environment,* 444 U.S. 620, 633–35, 100 S. Ct. 826, 63 L. Ed. 2d 73, reh. denied, 445 U.S. 972, 100 S. Ct. 1668, 64 L. Ed. 2d 250 (1980); *Grayned* v. *Rockford,* 408 U.S. 104, 114–21, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *Broadrick* v. *Oklahoma,* 413 U.S. 601, 611–13, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); *Thornhill* v. *Alabama,* 310 U.S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940).

A party has standing to raise a claim of overbreadth only if "there [is] a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); see also *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 216, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975); *Broadrick* v. *Oklahoma,* supra, 613–15. The defendants in this case argue that the Shelton zoning regulations jeopardize access to outdoor entertainment throughout Shelton and implicate protected activities such as political speech. These arguments cannot be sustained without a showing of a foundation for the "realistic danger" that the defendants envisage. The record does not support a claim that all outdoor enter-

tainment is barred everywhere in the city of Shelton. The defendants' contention that the language of the zoning regulation is broad enough to exclude outdoor political speeches as well as concerts may well be true but does not strengthen their position. Regulations that are content-neutral in imposing time, place, and manner restrictions are not unconstitutional under the circumstances of this case. *Renton* v. *Playtime Theatres, Inc.*, supra, 52. Both of these claims are in substance no different from the claim that the defendants raise on their own behalf and therefore do not create standing to mount an overbreadth challenge. See *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent*, supra, 802. In the absence of a demonstrated danger that the regulation will significantly impinge upon the first amendment rights of those not before the court, the defendants have no standing to press a claim of overbreadth.[5]

## II

The defendants also contend that Shelton's zoning regulations violate the Connecticut constitution. They argue that even if the United States constitution does not guarantee their right to hold rock concerts in residential areas, the state constitution does. We need not address the merits of this claim because the defendants lack standing to demand relief under the state constitution.

---

[5] The defendants also claim that the Shelton zoning regulations and the zoning board's enforcement order are impermissibly vague in excluding outdoor entertainment from residential districts. Judge Glass found, in the defendants' original appeal from the order of the zoning board of appeals, that the regulations and the order were not vague. We denied the defendants' petition for certification of their appeal from this judgment. The defendants cannot now collaterally challenge Judge Glass's findings. See *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); *Brockett* v. *Jensen*, 154 Conn. 328, 337, 225 A.2d 190 (1966).

Article first, §§ 4[6] and 5[7] of the Connecticut constitution set out state protections of free speech. While it is well settled that provisions of our state constitution may be construed to provide greater protection of rights than the United States constitution affords; see *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 56–58, 469 A.2d 1201 (1984); *Horton* v. *Meskill,* 172 Conn. 615, 641–42, 376 A.2d 359 (1977); it is equally well established that a litigant may challenge the validity of a statute or ordinance under the Connecticut constitution only as it has been applied to him. He may not claim that the provision is invalid because it impermissibly impinges upon the constitutional rights of others. *Southern Connecticut Gas Co.* v. *Housing Authority of New Haven,* 191 Conn. 514, 522, 468 A.2d 574 (1983); *General Electric Supply Co.* v. *Southern New England Telephone Co.,* 185 Conn. 583, 593, 441 A.2d 581 (1981); *Burritt Mutual Savings Bank* v. *Tucker,* 183 Conn. 369, 379, 439 A.2d 396 (1981); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn 483, 494–95, 400 A.2d 726 (1978); *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 171–72, 363 A.2d 22 (1975); see also *State* v. *Sinchuk,* 96 Conn. 605, 615, 115 A.2d 33 (1921).

Our inquiry is therefore limited to a determination of whether the application of Shelton's zoning regulations to Pinecrest violated article first, §§ 4 and 5. In order to sustain such an attack under the Connecticut constitution, the defendants must establish beyond a reasonable doubt that the regulations deny them their rights guaranteed by article first, §§ 4 and 5. See, e.g., *Weil* v. *Miller,* 185 Conn. 495, 501, 441 A.2d 142 (1981); *Gentile* v. *Altermatt,* 169 Conn. 267, 307, 363 A.2d 1

[6] The constitution of Connecticut, article first, § 4 provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

[7] The constitution of Connecticut, article first, § 5 provides: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press."

(1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 385, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976); *Lublin* v. *Brown,* 168 Conn. 212, 219–20, 362 A.2d 769 (1975); *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49 (1968); *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966).

In this case, the defendants have failed to show a denial of their own constitutional rights because they have not exhausted the administrative remedies available to them under the Shelton zoning plan. There is nothing in the record to indicate that the defendants have attempted to gain permission to hold concerts as an accessory use to the Pinecrest property or to any other property in town. The defendants have also failed to seek a variance that would allow them to present outdoor entertainment. The fact that the defendants have raised state constitutional issues does not give them the right to bypass the zoning procedures of the city of Shelton. See *Beit Havurah* v. *Zoning Board of Appeals,* 177 Conn. 440, 446, 418 A.2d 82 (1979); *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 268, 121 A.2d 640 (1956). Until the defendants have exhausted these procedures, they cannot claim that the city has denied their right of free speech under the state constitution. We therefore do not reach the merits of their state claim.

There is no error.

In this opinion the other judges concurred.