SEBASTIAN GANGEMI ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF FAIRFIELD
(AC 17688)

Landau, Schaller and Daly, Js.

Argued February 16—officially released August 24, 1999

*John E. Curran*, for the appellants (plaintiffs).

*Richard H. Saxl*, town attorney, for the appellee (named defendant).

*John F. Fallon*, for the appellees (intervening defendants).

*Opinion*

LANDAU, J. The plaintiffs, Sebastian Gangemi and Rebecca Gangemi, appeal from the judgment of the Superior Court dismissing their appeal from the decision of the zoning board of appeals of the town of Fairfield (board)[1] on the ground that the court lacked

---

[1] Barry Kramer and Judith Kramer, the owners of property abutting the residence owned by the plaintiffs, intervened as defendants in this case. See General Statutes § 8-8 (a) (1).

subject matter jurisdiction. On appeal, the plaintiffs claim that the trial court improperly concluded that it did not have subject matter jurisdiction. Specifically, the plaintiffs argue that the trial court does have subject matter jurisdiction in that the "no rental" condition attached to the variance was personal to the plaintiffs and, therefore, void ab initio, and that the condition's validity could be collaterally attacked at any time after the statutory appeal period had passed.[2] In the alternative, the plaintiffs claim that even if the no rental condition was not personal, it is subject to collateral attack under *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 616 A.2d 793 (1992). We affirm the judgment of the Superior Court.[3]

A review of the relevant facts, which are undisputed by the parties, facilitates an understanding of the issues in this appeal. As set forth in the Superior Court's memorandum of decision, the plaintiffs are the owners of property located at 863 Fairfield Beach Road in Fairfield. On March 13, 1986, the plaintiffs filed an application with the board requesting a variance in the setback requirements from the Fairfield zoning regulations. The variance that the plaintiffs sought would have allowed them to enlarge their nonconforming home and also

[2] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court . . . . The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published . . . ."

[3] The plaintiffs also claim that the no rental condition was a taking of property without just compensation in violation of the fifth and fourteenth amendments to the United States constitution and article first, § 11, of the constitution of Connecticut. An appellate tribunal normally does not address constitutional issues unless it is necessary. *Packer* v. *Board of Education*, 246 Conn. 89, 98, 717 A.2d 117 (1998); *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 306, 545 A.2d 530 (1988). Because we conclude that the Superior Court lacked subject matter jurisdiction to entertain the appeal, it is unnecessary for us to address this claim.

would have allowed them to convert the home from summer use to year-round use. The plaintiffs asserted that to complete the conversion of the home, they needed to enclose the existing porch, enlarge the bathroom and construct a furnace room. In their application, the plaintiffs indicated that they "[intended] to use the property for family use only on a year-round basis."

The board conducted a public hearing on the plaintiffs' application. On May 1, 1986, the board granted the plaintiffs' application subject to the following conditions: (1) the plaintiffs would provide two off-street parking spaces; and (2) the use of the home would be limited to family use and would not be used for rental purposes.[4] The plaintiffs did not appeal or otherwise challenge the validity or imposition of either condition. Thereafter, in 1990, the plaintiffs moved out of the home and started renting the property to various tenants. On May 20, 1996, Peter Marsala, Fairfield's zoning enforcement officer, issued to the plaintiffs an order to comply that indicated that the plaintiffs were violating the board's conditional approval by renting the home and ordered the plaintiffs to have the tenants vacate the subject property.

Thereafter, on June 3, 1996, the plaintiffs filed an application with the board requesting that the board invalidate the no rental condition and, thereby, reverse the order to comply. On August 1, 1996, the board conducted a public hearing and denied the plaintiffs' application.[5] The plaintiffs appealed from the board's

---

[4] Property located within the beach district in Fairfield is subject to § 11.1.1 of the Fairfield zoning regulations, which provides in relevant part: "A single detached dwelling for one family . . . [and] no dwelling or dwelling unit in the Beach District may be occupied by more than four (4) unrelated persons." The plaintiffs' property is located within the beach district.

[5] The board, in its denial of the application, stated the following reasons: "The Board felt that the [Board] in 1986 did not attach the condition to the variance as it was offered by the applicant on the applicants' application for a variance and the application was basically approved as submitted. It would be absurd to now allow the applicant to come forward and simply

decision to the Superior Court on August 21, 1996, pursuant to General Statutes § 8-8 (b). The Superior Court concluded that the plaintiffs' failure to file an appeal challenging the validity of the no rental condition within fifteen days from the date when notice of the board's decision was published in 1986 deprived the court of subject matter jurisdiction to entertain the appeal. From that judgment, the present appeal ensued.

I

The plaintiffs initially claim that the no rental condition is personal to the plaintiffs and, therefore, it is void ab initio and subject to collateral attack pursuant to the holding in *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 670 A.2d 1271 (1996). As such, the plaintiffs assert that the trial court had the requisite subject matter jurisdiction over this action, even though the appeal was filed more than fifteen days from the date that notice was published. We disagree.

"It is well established that an appellate court will not retry the facts. Our review is to determine whether the judgment of the trial court was clearly erroneous or contrary to the law." (Internal quotation marks omitted.) *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 290–91, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). In this case, the Superior Court determined that the no rental condition attached to the variance was not personal, but, instead, ran with the land. We, therefore, are called upon to review the legal conclusions of the Superior Court. "When . . . the trial court draws

say we did not mean what we said when we originally applied for the variance or that we have now changed our mind. This Board further finds that because of the proximity of the houses in the beach section it does create a uniqueness and because of its uniqueness this condition of family use only can be defended as it does promote the public health of the neighborhood, it promotes the general welfare of the neighborhood and it does in fact conserve the value of the buildings located in the neighborhood."

conclusions of law, [the scope of our appellate] review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *ALCA Construction Co.* v. *Waterbury Housing Authority*, 49 Conn. App. 78, 86, 713 A.2d 886 (1998).

"Variances cannot be personal in nature, and may be based only upon property conditions. *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972); see T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 124. Thus, the identity of a particular user of the land is 'irrelevant to zoning.' *Dinan* v. *Board of Zoning Appeals*, 220 Conn. 61, 66–67 n.4, 595 A.2d 864 (1991); see T. Tondro, supra, p. 88 ('zoning power may only be used to regulate the "use, not the user" of the land'). In fact, we have stated that '[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance.' *Garibaldi* v. *Zoning Board of Appeals*, supra, 239–40. '[T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land'; T. Tondro, supra, p. 137; limits the ability of zoning boards 'to act for personal rather than principled reasons,' particularly in the context of variances." *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 857–58. In determining the use of property permitted by a variance, our Supreme Court "has considered not only the language of the variance certificate, but also the specific use of the property proposed by the applicant, as set forth in the variance application." *L & G Associates, Inc.* v. *Zoning Board of Appeals*, 40 Conn. App. 784, 787, 673 A.2d 1146 (1996), citing *Raymond* v. *Zoning Board of Appeals*, 164 Conn. 85, 87–88, 318 A.2d 119 (1972).

In *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 96, our Supreme Court noted that "failure to file a zoning appeal within the statutory time period deprives the trial court of jurisdiction over the appeal. . . . [F]ailure . . . to appeal from the action of a zoning authority renders that action final so that the correctness of that action is no longer subject to review by a court." (Citations omitted.) Id., 102. The *Upjohn Co.* court recognized that there are certain actions of zoning authorities that could be attacked in an independent action after the appeal period has expired. Id., 101. The court also noted, however, that "the recipient of a zoning permit that had been granted subject to a condition may [not] accept both the benefits of the permit and the condition attached to it, by failing to challenge the condition by way of direct appeal . . . and then, years later, defend against the enforcement of the condition by attacking its validity ab initio." Id., 101–102. Leading the court to this conclusion was the consideration that, in the zoning context, there is a "need for stability in land use planning and the need for justified reliance by all interested parties—the interested property owner, any interested neighbors and the town— on the decisions of the zoning authorities. It would be inconsistent with those needs to permit . . . a challenge to a condition imposed on a zoning permit when the town seeks to enforce it more than three years later." Id., 102.

Our Supreme Court later recognized an exception to the rule in *Upjohn Co.* and held that a party could collaterally attack a personal condition attached to a variance because personal conditions are void ab initio. See *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 858. Furthermore, the *Reid* court determined that Public Acts 1993, No. 93-385, as it amended General Statutes (Rev. to 1993) § 8-6 (b),[6] "applied retroactively and that

___

[6] General Statutes § 8-6 (b) provides: "Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature

any prospective challenges to variances subject to otherwise invalid, integral conditions must result in the severance of the condition and the survival of the otherwise valid variance." *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 864. The court noted that "the legislature . . . intended to sever invalid personal conditions from otherwise valid variances whether such condition was in existence at the time of the act's passage or created later." Id., 863.

*Reid*, however, is distinguishable from the present matter. In *Reid*, Florence Kastner, Reid's predecessor in title, had applied to the board in 1975 for a variance to allow year-round occupancy of her home " 'for her life use of the property only.' " Id., 852. The board granted the variance, which permitted year round occupancy of the property, for Kastner's " 'life use only.' " Id. Kastner did not appeal from the granting of the variance and continued to occupy the property until she sold it to Reid in 1990. Id. In 1992, the zoning enforcement officer ordered Reid to cease occupying the premises as a year-round dwelling. Id. Reid appealed to the board, which found the cease and desist order to be valid. Id. Thereafter, Reid appealed to the Superior Court, which determined that the condition that Kastner have year round occupancy for her life use only was unreasonable, and that "because the 'condition was an integral part of the board's decision,' it was not severable and the variance was void ab initio." Id., 854. Accordingly, the Superior Court dismissed Reid's appeal. Id. In light of the legislature's passage of Public Acts 1993, No. 93-385, Reid filed a motion to reargue, which the Superior Court denied. Id. The appeal from

to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the validity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance."

that judgment was transferred to our Supreme Court. Id. The *Reid* court determined that the "illegal condition of 'life use only' is severed from [Reid's] variance and that his variance survives and runs with the land, such that [Reid] is entitled to year-round occupancy of the subject premises." Id., 864.

In the present case, the plaintiffs stated in their 1986 application for a variance: "Owners intend to use the property for family use only on a year-round basis." They argue on appeal that the "only meaning that this sentence can have is that the 'owners' who at the time were the plaintiffs . . . intended to use the property personally, and did not intend to lease or loan it to others." We conclude, however, that contrary to the plaintiffs' contention, the condition attached to the variance in the present case runs with the land and is not personal to the plaintiffs.

The plaintiffs sought the variance in the setback requirements in 1986 to enlarge their nonconforming dwelling, the stated purpose of which was to permit occupancy of the dwelling on a year-round basis, and to limit the occupancy to "family use only." The variance was granted with that specific condition attached. The plaintiffs now invite us to construe narrowly the phrase "family use only" to mean that the condition applied only to them and, as such, was personal. We decline that invitation. "By its very definition, a variance is granted with respect to a particular piece of property; it can be enjoyed not only by the present owner but by all subsequent owners." *Garibaldi* v. *Zoning Board of Appeals*, supra, 163 Conn. 239. Unlike the plaintiff in *Reid*, the plaintiffs in this case did not expressly request a condition that was personal to them. Moreover, the board did not subject the variance to a condition that the plaintiffs continue ownership of the property; see *Reid* v. *Zoning Board of Appeals*, supra, 235 Conn. 858; the property could be conveyed at any time and the

successors in title will stand in the plaintiffs' shoes and benefit from the variance. Accordingly, we agree with the trial court that the no rental condition attached to the variance was not personal to the plaintiffs, but, rather, runs with the land.

Finally, having concluded that the condition was not personal, we note that, if we were to hold otherwise and to allow an applicant to challenge the validity of a nonpersonal condition attached to a variance that was not questioned until after the applicant's noncompliance, a variance applicant would be able to benefit from the condition and then to challenge the validity of that condition when it no longer suited the needs of the respective applicant. This an applicant cannot do. See *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 101–102. Furthermore, we cannot permit a collateral attack on the no rental condition ten years after the board granted the variance because allowing a collateral attack on a nonpersonal condition at this time would frustrate the "need for stability in land use planning . . . ." Id., 102. Under the circumstances of this case, we conclude that the condition was not personal and, therefore, because the plaintiffs did not challenge the condition by appeal within the statutory appeal period in 1986, the plaintiffs are precluded from collaterally attacking the condition by challenging the order issued by Marsala in 1996. The Superior Court, therefore, lacked subject matter jurisdiction to entertain the appeal.

II

In the alternative, the plaintiffs claim that even if the condition was not personal, the court does have subject matter jurisdiction in that the no rental condition is subject to collateral attack under *Upjohn Co.* v. *Zoning*

*Board Appeals*, supra, 224 Conn. 96.[7] Specifically, the plaintiffs claim that the condition is so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, and that the continuance of this previously unchallenged condition violates strong public policy. In support of this argument, the plaintiffs assert that the board imposed a condition that had no connection to how the land was used but, instead, placed an unnecessary restraint on the alienation of the periodic tenancy in the property in perpetuity.[8] We disagree.

[7] In *Upjohn Co.*, the court stated, in dicta, that "there may be exceptional cases in which a previously unchallenged condition was so far outside what could have been regarded as a valid exercise of zoning power that there could not have been any justified reliance on it, or in which the continued maintenance of a previously unchallenged condition would violate some strong public policy. It may be that in such a case a collateral attack on such a condition should be permitted." *Upjohn Co.* v. *Zoning Board of Appeals*, supra, 224 Conn. 104–105.

[8] In support of their argument, the plaintiffs also assert that the no rental condition is based on an unfounded prejudice against people who rent rather than own the homes in which they live. Specifically, the plaintiffs argue that the board's lack of jurisdiction to discriminate against renters was so obvious that there could not have been any justified reliance on it. Moreover, they argue that "[e]xpressly excluding by government action economic classes of people from living in a particular location, without any consideration of how land is used, is . . . a violation of . . . public policy."

We decline to address this argument, however, because the plaintiffs lack standing to raise it in support of their claim. It is well established that a litigant does not have standing to assert the constitutional rights of another. *Bell* v. *Planning & Zoning Commission*, 174 Conn. 493, 499, 391 A.2d 154 (1978). In support of their contention that they possess the requisite third party standing to assert this argument, the plaintiffs rely on *Craig* v. *Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) (gender based classification); *Singleton* v. *Wulff*, 428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (abortion rights); *Eisenstadt* v. *Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) (contraceptive rights); *Barrows* v. *Jackson*, 346 U.S. 249, 73 S. Ct. 1031, 97 L. Ed. 2d 1586 (1953) (racial controversy); and *State* v. *Patterson*, 230 Conn. 385, 393–94, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996) (racial controversy). The facts in this case, however, are more like those set forth in *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 588–89, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 6 (1986). In *Husti*, the plaintiffs, the zoning enforcement officer of the city of Shelton and the

"Zoning legislation has been upheld with substantial uniformity as a legitimate subject for the exercise of the police power when it has a rational relation to the public health, safety, welfare and prosperity of the community and is not in plain violation of constitutional provision, or is not such an unreasonable exercise of this power as to become arbitrary, destructive or confiscatory. . . . Zoning regulations, so far as they reasonably promote the public health, safety and welfare, are constitutional even though their effect may be to limit the exercise of private property rights."[9] (Citations omitted; internal quotation marks omitted.) *Builders Service Corp.* v. *Planning & Zoning Commission*, 208

planning and zoning commission of that city, sought injunctive relief to compel the defendants to comply with an order that prohibited the defendants from conducting outdoor concerts at a country club that they owned, which was located in a residential zone. The defendants argued, inter alia, that Shelton's zoning regulations violated the Connecticut constitution, namely, their right to free speech. The *Husti* court concluded that "a litigant may challenge the validity of a statute or ordinance under the Connecticut constitution only as it has been applied to him. He may not claim that the provision is invalid because it impermissibly impinges upon the constitutional rights of others." Id., 589; see also *New Haven* v. *Freedom of Information Commission*, 4 Conn. App. 216, 221, 493 A.2d 283 (1985).

"Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress." (Internal quotation marks omitted.) *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 50, 357 A.2d 472 (1975). Here, the plaintiffs essentially assert the rights of potential renters of their property who are being discriminated against as a result of the "no-rental" condition. Accordingly, a potential renter of the property, not the plaintiffs in their owner capacity, would have standing to raise the argument that the condition discriminates against renters. Because no potential renter is a party to this action, however, the argument cannot be raised. See *Weigel* v. *Planning & Zoning Commission*, 160 Conn. 239, 247, 278 A.2d 766 (1971) (plaintiffs had no standing to raise any claim of unfair treatment to person who was not a party).

[9] While in the present case we do not address the validity of a zoning regulation, there is no reason why a rational basis review should not apply equally to a review of a variance condition as it does to a zoning regulation.

Conn. 267, 283, 545 A.2d 530 (1988); see also General Statutes § 8-2.[10]

"[A] variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations." (Internal quotation marks omitted.) *L & G Associates, Inc.* v. *Zoning board of Appeals*, supra, 40 Conn. App. 788. Reasonable conditions attached to a variance allow the variance to be in harmony with the general purpose and intent of the zoning ordinance. *Burlington* v. *Jencik*, 168 Conn. 506, 509, 362 A.2d 1338 (1975). In this case, the plaintiffs sought to make substantial structural alterations to their property to transform the property from summer use to year-round use. After granting the variance subject to the no rental condition, the board, in 1996, denied the plaintiffs' application to invalidate that condition.[11] The reasons for the denial included, inter alia, that the houses are in close proximity to one another and, as such, create a uniqueness. Because of the uniqueness, the "family use only" condition promotes the public health and general welfare of the neighborhood and conserves the value of the buildings located in the community. Essentially, the board's reasoning parallels the objectives delineated in § 8-2.

The board reasonably could have inferred that the no rental condition related to controlling residential density and the intensification of the neighborhood. Specifically, the substantial expansion of the premises created the possibility that increased demands would be

---

[10] General Statutes § 8-2 (a) provides in relevant part: "Such regulations shall be designed to lessen congestion in the streets . . . to promote health and the general welfare . . . to prevent the overcrowding of land; [and] to avoid undue concentration of population . . . . Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings . . . ."

[11] See footnote 5.

put on municipal services provided by the community. Furthermore, rental occupancy of the property, which occupancies tend to be more transient than owner occupancies, would affect the peace and quiet of the neighborhood, and would effectively create properties with absentee landlords in a single family residential neighborhood. The condition, therefore, serves to lessen the impact of the expansion of the home and the intensification of the plaintiffs' nonconforming use on the surrounding residential neighborhood, thereby contributing to the conservation of the uniqueness of the community and of the property values therein, and ensuring more stable living in the beach district community. The town of Fairfield had a right to find such a situation desirable and to subject the variance to the no rental condition. See, e.g., *Farmington* v. *Viacom Broadcasting, Inc.,* 10 Conn. App. 190, 196, 522 A.2d 318, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987) (within scope of zoning regulations for commission to impose conditions related to preserving character of neighborhood). We conclude, therefore, that the rationale behind the issuance of the no rental condition was rationally related to the public health, safety and welfare of the community.[12] See *Builders Service Corp.* v. *Planning & Zoning Commission,* supra, 208 Conn. 283. Under the circumstances of this case, we conclude that the Superior Court properly concluded that it lacked the requisite subject matter jurisdiction to entertain the plaintiffs' appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Moreover, the plaintiffs' argument is somewhat disingenuous in that they acknowledged during oral argument before the Superior Court that a no rental condition, under some circumstances, could be found reasonable.