[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Gina Resurreccion filed a four-count complaint alleging the following: 1) unauthorized entry by the defendant in violation of General Statutes §§ 47a-16 (c) and 47a-16 (d) thereby unreasonably harassing the plaintiff; 2) loss of valuable items as a result of such unauthorized entry; 3) the unauthorized entry resulted in a breach of the covenant of quiet enjoyment and the plaintiff was forced to find other accommodations, and 4) a violation of plaintiff's right to privacy by the unauthorized invasion and pilfering of the plaintiff's personal belongings.
The plaintiff is seeking actual, compensatory and punitive damages. The plaintiff is also seeking reasonable attorney's fees and costs.
On June 7, 2000, a default judgment was entered in favor of the plaintiff and damages were awarded. On August 2, 2000, after hearing, the defendant's Motion to Open was granted. On October 4, 2000, the defendant's "Motion to Implead Third Party" was granted.
After trial, and an assessment of the credibility of the witnesses, the court finds the following facts: Gina Resurreccion moved to Connecticut from New York to work at WVIT. She worked between twenty and thirty hours a week. She earned approximately $300.00 per week. Her duties included setting up camera, scripts and the TelePrompTer. When she was hired at WVIT, she was also seeking employment with News 12, New York.
Ms. Resurreccion entered into a six month written lease agreement with the defendant, Normandy Heights LLC. The lease period started May 1, 1999 and ended October 31, 1999. Ms. Resurreccion insisted on a six month lease although Normandy Heights wanted a one year lease agreement. The monthly rental amount was $670.00. The apartment was an efficiency unit in a secured complex. There were surveillance cameras, and one had to be "buzzed in" if they did not have a key. CT Page 12174
Paragraph #15 of the lease agreement[1] specified the terms and conditions under which a landlord may enter the premises. Ms. Resurreccion completed the "move-in inspection sheet"[2] and returned it to the rental office. On the sheet there was the following question: "If work needs to be done in your apartment, do we have permission to enter in your absence?" Ms. Resurreccion circled "No".
Gina Resurreccion left for New York on June 13, 1999 at approximately 12:30 P.M. She returned on June 15, 1999 at approximately 6:00 P.M. Ms. Resurreccion could not get into her apartment with her key. She went to the rental office and was given a different key. She again could not get into the apartment with that key. Ms. Walton, the property manager, accompanied the plaintiff to her apartment. The plaintiff gained entry with a different key in Ms. Walton's possession.
Ms. Walton informed the plaintiff that she had difficulty with her keys because the door had been double-locked. The door was double-locked after the employees of The Window Shop had replaced the thermopanes on the glass sliding window in her apartment on June 14, 1999. Ms. Resurreccion had previously requested this replacement on May 3, 1999. prior to signing the lease. She wanted the replacement because there was moisture between the glass.
The Window Shop is a family owned and operated business. The company is on call to replace glass and do other repairs at the apartment complex. They did two jobs at the apartment complex on June 14, 1999, one of which was the replacement of the thermopanes in the plaintiff's apartment. Sometime prior to June 14, 1999, the window in the plaintiff's apartment had been measured for the glass replacement.
Ms. Walton, the property manager, let workers into the apartment. The workers are never given keys unless the unit is empty. Michael Lamerato, a sixteen-year employee of the Window Shop, was one of the employees who replaced the thermopanes. The job took them less than one hour.
On June 15, 1999, after Ms. Walton informed the plaintiff about the repairs. They were together for approximately two hours, with one of the hours spent in the apartment. Ms. Walton apologized for the entry into the apartment for the repairs during the plaintiff's absence. The plaintiff requested and received a written apology. Ms. Walton requested that the plaintiff check the efficiency apartment to see if anything was missing. The plaintiff neither inspected the apartment nor checked to see if anything was missing. On June 15, 1999, at approximately 6:30 P.M., the plaintiff wrote a three-page statementp[3] of her account of what had happened. She included a statement about very expensive items, CT Page 12175 including jewelry and the watches she is claiming were lost or pilfered. The plaintiff also agreed to check for any missing items and to notify the office by 5:30 P.M. the next day, June 16, 1999.
By letter dated June 16, 1999,[4] Ms. Resurreccion notified Ms. Walton, the property manager, that she had not given permission to enter her apartment on June 13, 1999 to replace the slider door window. She had also checked "No" declining permission to enter the apartment in her absence and the work was not an emergency situation. She stated that she felt unsafe and that her privacy had been violated. She also informed Ms. Walton that she had contacted an attorney who would be in touch with her. The letter did not include any missing items.
The statement of June 15, 1999, written by the plaintiff, contained the agreement that she would check to see what was missing. At trial she did not recall that she had been told to check and make a list of any missing items. Ms. Resurreccion stated that she called a friend who told her to call the police. At her deposition[5] she stated that she had contacted the police on the advice of her lawyer. It is unclear if the friend and the lawyer are one and the same.
Ms. Resurreccion stated she did not call the police immediately because she did nor think it was a police matter. She also stated she did not check to see if anything was missing because she did not want to disturb any prints. When she finally made the complaint to the police, she told them that someone had broken into the apartment, although she knew that the property manager had let the workers in to replace the glass.
Officer Carlone, a ten-year-veteran of the New Britain Police Department followed up on the initial complaint taken by the patrol officer. Officer Carlone made six attempts to contact Ms. Resurreccion. He had gone to the apartment, he left several messages on her answering machine, and he had scheduled a meeting with her and she failed to show. Forty-five days later the plaintiff contacted Officer Carlone. The plaintiff was not very cooperative. The case has been closed pending further developments.
On June 16, 1999 Ms. Resurreccion inspected her efficiency apartment to see what was missing. She claimed the following items as missing: 1) Rolex watch valued at $4,850.00; 2) a Tag Heuer watch valued at $250.00; 3) electronic organizer and 4) $450.00 in cash. Ms. Resurreccion claimed she had not worn either watch to New York. She stated that the watch was between felt cloth and the cash was on top of a shelf in the closet. The organizer was on a table next to her computer. Except for the organizer, none of the items were in plain view. There was no evidence presented, CT Page 12176 that the areas where she kept the items had been disturbed.
By letter dated July 1, 1996,[6] Ms. Resurreccion gave the defendant two weeks' notice that she would be vacating the apartment. She claimed that she was forced to leave because of the entry into the apartment. She also mentioned other problems that she believed had been caused by the entry.
Again, by letter dated August 1, 1999,[7] the plaintiff gave thirty days' notice to the defendant that she would be vacating the premises. She also tendered rent in the amount of $695.00 for the month of August and instructed the defendant to refer any questions to her attorney. The plaintiff vacated the premises on August 31, 1999.
The plaintiff resigned from WVIT effective November 12, 1999.[8] The plaintiff had been warned about the possible termination of her employment because of a continuing problem with tardiness.[9] The plaintiff relocated to New York after accepting a position at News 12, New York. This position was full rime with increased salary and at a higher level than the one she held at WVIT.
Ms. Resurreccion had previously worked as a legal assistant. At the time of trial she was employed by Cedar Brook Club, New York.
 DISCUSSION
COUNT ONE Entry By Landlord
General Statutes § 45a-16 (c) provides as follows: "a landlord shall not abuse the right of entry or use such right to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter, and may enter only at reasonable times, except in case of emergency."
General Statutes § 471-16(d) provides as follows: "a landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to court order or (4) if the tenant has abandoned or surrendered the premises.
General Statutes § 471-16a provides as follows: "unless otherwise agreed, the tenant shall be required to notify the landlord of any anticipated extended absence from the premises and the landlord thereupon may enter the dwelling unit at reasonable times during such prolonged absence to inspect the premises, make necessary or agreed to repairs, CT Page 12177 alterations or improvements, supply necessary or agreed to services or exhibit the dwelling unit to prospective or actual purchases, mortgagees, tenants, workmen or contractors.
Paragraph #15(a) of the lease agreement permitted the defendant to enter the premises at reasonable times, with notice . . . to make repairs. . . . When the plaintiff moved in, on the inspection checklist[10] she circled "No" to the question "if work needs to be done in your apartment, do we have permission to enter in your absence?" This list had been turned into the rental office.
On May 3, 1999, the plaintiff had requested that the sliding glass window in the apartment be repaired or replaced. The window had been measured for the replacement glass.
On June 13, 1999, the plaintiff went to New York and returned to the apartment on June 15, 1999. During her absence, on June 14, 1999, the defendant, through the property manager, entered the apartment. The property manager allowed the workers from the Window Store to enter the apartment to replace the thermopanes on the window, as had been requested by the plaintiff. However, the defendant did not give the plaintiff notice that the window would be repaired on June 14, 1999. The plaintiff was not required to notify the defendant of her absence because two days is not an extended absence. Furthermore, the plaintiff specifically requested that the defendant should not enter the apartment during her absence. This entry was not for an emergency.
The entry therefore, was an unauthorized entry in violation of General Statutes § 47a-16.
General Statutes 47a-16a permits the court to award damages at no less than the equivalent of one months rent and reasonable attorney's fees. The entry here was for the benefit of the plaintiff. One entry, without permission, to replace glass requested by the plaintiff, is not harassment.
The plaintiff is awarded the equivalent of one months rent and reasonable attorney's fees.
COUNT TWO Loss of Valuable Items
The plaintiff stated at trial that as a result of the entry by the defendants she lost a "Rolex" watch valued at $4,850.00, a "Tag Heuer" watch valued a $250.00, and electronic organizer, (no value given), and $450.00 in cash. CT Page 12178
The workers from the Window Shop did perform two repair jobs at the apartment complex on June 14, 1999. They were given access to the apartment by the property manager, and took less than an hour to replace the thermopanes in the plaintiff's apartment. The Window Shop is a family-owned business with long-term employees. They had previously done several repairs at the complex and continue to do repairs there. This complaint was the first one they were aware of.
When the plaintiff returned on June 15, 1999, she had to be let into the apartment by the property manager, because the door had been secured by a dead bolt. The property manager informed the plaintiff as to the repairs that were done during her absence. The plaintiff spent approximately two hours with the property manager, one of those hours inside the apartment. The apartment is an efficiency apartment. During the hour with the property manager that day, the plaintiff did not check to see if any items were missing.
The plaintiff contacted a friend and contacted an attorney, who may be one and the same person. The plaintiff also contacted the police department and filed a complaint alleging that someone had broken into her apartment. Officer Carlone, a ten-year veteran of the police department, got little or no cooperation from the plaintiff in investigating her claimed loss.
The plaintiff stated that the items she claimed she lost were not in plain view. The cash had been placed on top of a shelf in the closet. The plaintiff did not wear either watch to New York. The Rolex watch had been kept between a felt cloth. The organizer was next to her computer but no one took the computer. No evidence was presented to indicate that anything in the apartment had been disturbed.
The court is not convinced that the plaintiff suffered any loss. The plaintiff has not met' her burden of proof that any items were lost. Even if the items were lost, the court is not persuaded that it is the result of either the entry by the landlord or the workers who repaired the window.
COUNT THREE Breach of Covenant of Quiet Enjoyment
The plaintiff claims that the unauthorized entry constituted a breach of covenant of quiet enjoyment as she feared for her personal safety and was forced to find substitute living elsewhere.
"The covenant of quiet enjoyment insulates the tenant against acts or CT Page 12179 omissions on the part of the landlord . . . which interferes with the tenant's right to the use and enjoyment of the premises for the contemplated purpose . . ." 49 Am.Jur.2d, Landlord and Tenant 601 (1995).
The plaintiff returned to her apartment on June 15, 1999.[11] Her key did not work and she was unable to gain entry. The property manager gave her a second key and that too did not work. The property manager then gained entry by using a different key. The property manager determined that when the workers left, the door had been secured by the dead bolt.
The plaintiff consulted a friend, and an attorney and filed a complaint of a break-in. By letter dated July 1, 1999, the plaintiff gave two weeks' notice. Again by letter dated August 1, 1999,[12] the plaintiff gave thirty days' notice and tendered rent in the amount of $670.00 for the month of August. The plaintiff vacated the apartment on August 31, 1999.
The entry into the apartment on June 15, 1999, was made for the purpose of replacing thermopanes. This replacement had been requested by the plaintiff on May 3, 1999, prior to signing the lease agreement. She wanted the window replaced because there was moisture between the glass.
When the plaintiff returned from New York, the apartment had been secured by dead bolt. The premises overall were very secure. There were surveillance cameras, and one had to be "buzzed in" in order to gain entry. The plaintiff continued to occupy the premises from June 15, 1999 until August 31, 1999. During that time, she never requested that the locks be re-keyed or replaced.
The plaintiff was working part-time at WVIT in New Britain. She earned approximately $300.00 per week, and her rental payment was $670.00 per month. She had insisted on a lease for a term of six months rather than a year. The plaintiff had also been warned several times that her position was in jeopardy due to her tardiness, and she was notified on September 14,[13] that her employment would be terminated if the problem continued. The plaintiff had also continued her pursuit of employment in her home state of New York.
The plaintiff has failed to meet her burden of proof. Her conduct is more indicative of a tenant seeking to breach the lease agreement than fear for her safety if she continued living in the apartment.
COUNT FOUR Violation of Right to Privacy and Pilfering of Personal Belongings CT Page 12180
In a claim of violation of right to privacy, the facts must establish "an unreasonable intrusion upon the Seclusion of Another." Venturi vs.Sauif, Inc. 199 Conn. 588 (1983). The plaintiff must demonstrate an invasion of his privacy interests that is highly offensive to a reasonable person. Prolose vs. Pfizer, Inc. 192 Conv. Sup. 5486-5489 (June 24, 1992, Hurley, J).
In this case the defendant entered the apartment to repair a glass window, a repair that had been requested by the plaintiff. The entry into the apartment, under the facts of circumstances of this case, was neither unreasonable nor offensive. Additionally, no evidence was presented to support the allegation that the defendant "pilfered" any of the plaintiff's personal belongings.
The plaintiff failed to meet her burden of proof.
 CONCLUSION
COUNT ONE
Judgment in favor of the plaintiff. The defendant entered the plaintiff's apartment without her permission during her absence, in violation of General Statutes § 47a-16.
COUNTS TWO, THREE AND FOUR
Judgment in favor of the defendants. The plaintiff failed to meet her burdefn of proof.
Normandy Heights LLC failed to meet its burden of proof against the third party defendants.
 ORDER
The defendant, Normandy Heights LLC, is ordered to pay $3,670.00 to the plaintiff as follows: $670.00, the equivalent of one month's rent, and $3,000.00 as reasonable attorney's fees.
The defendant is also ordered to pay costs on the submission of the Bill of Costs.
 __________________ Crawford, J.