JOSEPH F. MISUK ET AL. *v.* ZONING BOARD OF APPEALS
OF THE CITY OF MERIDEN ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 4, 1951—decided January 22, 1952

*Charles M. Lyman,* with whom were *Robert M. Luby* and *David H. Jacobs,* for the appellants (defendants).

*William L. Beers,* with whom, on the brief, was *J. J. Henry Muller, III,* for the appellees (plaintiffs).

O'SULLIVAN, J. The plaintiffs own a parcel of land in Meriden and live in the house standing upon it. They appealed to the Court of Common Pleas from the action of the named defendant, hereinafter called the board, in granting a variation in the zoning regulations in favor of their next door neighbors, the defendants Abram J. and Anne White. The court sustained the appeal, and from the judgment entered thereon all three defendants have appealed to this court.

The finding is not subject to correction. It recites the following facts: Hillcrest Terrace in Meriden is a street of charming and substantial one-family residences. Before coming to a dead end, it runs for several hundred feet along the crest of a ridge sloping to the west and, in that direction, unfolding a view across a wide valley. It is considered to be one of the best residential streets in Meriden. Under the zoning ordinance as originally adopted in 1927 and subsequently amended, the area in question is designated as a "single residence district." With certain qualifications not material to the case at bar, the ordinance provides that the minimum side-yard requirement for a house in such a district is six feet.

The plaintiffs' property, purchased by them in 1949, lies on the westerly side of Hillcrest Terrace. A vacant lot adjoining their property on the south was bought by the Whites in 1950. The latter then engaged an architect to prepare plans for a residence, with a one-story, two-car garage to be connected to the north end of the house by an inclosed breezeway eight feet in length. The plans, as drawn, called for the structure to be erected so that it would be eleven feet eight inches from the southerly, and six feet from the northerly, boundary of the lot.

Preparatory to actual construction, White and his contractor laid out that part of the foundation which

was farthest away from the plaintiffs' property. In doing so, they measured from a pipe, set in the ground, erroneously assumed by them to mark the southerly boundary of the lot. As a matter of fact, the correct boundary was a few feet farther to the south. No effort was made by either White or his contractor to determine at that time how close to the plaintiffs' property the layout thus made would bring the proposed structure.

About October 1, 1950, when the main body of the house was pretty well along, work on the garage was begun. The plaintiffs then became aware that the northerly wall of the garage section of the structure was being erected two feet from their southerly line. The building inspector of the city, to whom they immediately protested, went at once to the locus and ordered construction stopped. Upon learning of this, White conferred with the inspector and on October 5 made application for the first time for a building permit.

The Whites then requested the board to grant a variation in the side-yard requirement in order that construction might be resumed. The ground upon which the Whites based their request was that they were confronted with practical difficulties and unnecessary hardships. On November 8, the board unanimously granted the application. Construction was resumed at once and continued until the filing of the appeal on November 17.

The first claim urged by the defendants is that the building under construction did not in fact violate the zoning regulations. This is a rather strange position for them to take. If their contention were correct, they would not need the variation, the propriety of which is the sole question on this appeal. This inconsistency aside, their claim is that the situation is

governed by an exception in the ordinance. Subsection (c) of § 9, on which they rely, recites that "No part of a required yard . . . shall be higher in level above the floor of the first story than one foot for each two feet of distance from the building, provided that for a building of accessory use or garage in any district . . . no yard except on a street frontage is required by this ordinance for the first story." Section 9(g) provides that "There shall be in front of every building not fronting on a street a yard not less than fifteen feet in depth." These subsections are not as clearly phrased as they might be. They appear to have reference to garages or other buildings which are separate and distinct from other structures; in other words, to those which are accessory buildings. We so construe them. A garage constructed as a part of a residence and, as here, architecturally in harmony with the house of which it is a part cannot be called an accessory building. See *Bassett* v. *Pepe*, 94 Conn. 631, 638, 110 A. 56; *Peirce* v. *Beyer*, 66 Colo. 554, 555, 185 P. 348. The course adopted by the Whites was clearly in violation of the provisions of the zoning ordinance.

The controlling question for the court to answer was whether the board abused its discretion in granting the variation. *Blake* v. *Board of Appeals*, 117 Conn. 527, 533, 169 A. 195; *St. Patrick's Church Corporation* v. *Daniels*, 113 Conn. 132, 135, 154 A. 343. Section 10(e) of the ordinance authorizes the board to vary the application of the regulations where there are "practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance." We have repeatedly stated that the power to grant a variation is to be sparingly exercised. *Nielsen* v. *Board of Appeals on Zoning*, 129 Conn. 285, 289, 27 A. 2d 392; *Benson* v. *Zoning Board of Appeals*, 129 Conn. 280, 284, 27 A. 2d 389; *Rommell* v. *Walsh*, 127

Conn. 272, 278, 16 A. 2d 483; *Grady* v. *Katz,* 124 Conn. 525, 529, 1 A. 2d 137. It is to be used only where a situation falls fully within the authority granted. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 540, 45 A. 2d 828.

The case at bar does not present such a situation. It must be borne in mind that the predicament which arose did not originate in the ordinance or in other conditions beyond the control of the Whites. The difficulty or hardship which now plagues them was created by themselves. To be sure, they acted under a mistake, but it was one of their own making and was occasioned by conduct which might well be classified as reckless. In the first place, they showed an indifference to municipal regulations in that they did not obtain a building permit as required by law. With equal indifference towards the rights of their neighbors, they laid out the foundations of their residence by measuring from a pipe assumed to mark the southerly boundary of their lot. They made no effort to determine whether measuring from this marker would affect the plaintiffs by bringing the building within the forbidden distance from the property line. They continued the construction work after obtaining the variation, regardless of the possibility of an appeal. Their seeking of relief from the board was to escape the result of their own acts. The difficulties and hardships to which the ordinance refers do not include those occasioned solely by the reckless conduct of him who seeks the variation. *Celentano* v. *Zoning Board of Appeals,* 136 Conn. 584, 587, 73 A. 2d 101; see *Pallman* v. *East Haven,* 135 Conn. 593, 67 A. 2d 560; *Torello* v. *Board of Zoning Appeals,* 127 Conn. 307, 16 A. 2d 591.

There is no error.

In this opinion the other judges concurred.