GEURSON D. SILVERBERG *v.* GREAT SOUTHWEST
FIRE INSURANCE COMPANY
(13739)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued February 6—decision released April 24, 1990

*Joseph T. Sweeney,* for the appellant (defendant).

*Robert J. Cathcart,* with whom was *James B. Pomeroy,* for the appellee (plaintiff).

HULL, J. The dispositive issue in this appeal is whether the plaintiff, Geurson D. Silverberg, qualified as an insured under a public officials and employees liability insurance policy (policy) purchased by the city of Norwich from the defendant, Great Southwest Fire Insurance Company. The plaintiff was sued by the city of Norwich for professional malpractice that allegedly had been committed by the plaintiff during his tenure as assistant corporation counsel for that city. The present action was instituted by the plaintiff, when the defendant, upon being notified of the malpractice claim against the plaintiff, denied the plaintiff coverage under the policy. The two count complaint was tried before a jury that found in favor of the plaintiff on each of the counts and awarded damages in the amount of $1,000,000 on the first count and $1,050,000 on the second count. From the judgment rendered on the jury verdicts, the defendant appealed to the Appellate Court; we subsequently transferred this case to ourselves pursuant to Practice Book § 4023. We find error.

The facts relevant to this appeal are as follows. The plaintiff is an attorney who has practiced law in Norwich since 1946. In January, 1974, pursuant to a city

ordinance[1] and a resolution of the Norwich city council, the plaintiff was appointed to the position of assistant corporation counsel. The plaintiff was reappointed to that position by the city council in January, 1976, December, 1977, and December, 1979, and served continuously in that capacity until December, 1981. While serving as assistant corporation counsel, the plaintiff was listed on the city payroll and was paid on a biweekly basis. Social security and unemployment taxes were withheld from his earnings. The plaintiff was also eligible to participate in the city's health and life insurance programs. The legal work performed by the plaintiff in his capacity as assistant corporation counsel was assigned to him by the corporation counsel. The plaintiff handled these matters from the office he maintained for his private law practice.

In December, 1982, the plaintiff was sued by the city of Norwich for legal malpractice. The gravamen of the city's complaint was that, while serving as assistant corporation counsel, the plaintiff had failed properly to prosecute a tax appeal on behalf of the city. The plaintiff immediately gave notice of the action against him to his professional malpractice carrier, American Home Assurance Company (American Home). Ameri-

---

[1] Ordinance No. 522, now codified and amended in §§ 2-15 through 2-17 of the Norwich Code of Ordinances, provides as follows: "Be it ordained by the Council of the City of Norwich:

"1. There shall be an assistant corporation counsel who shall be appointed by the corporation counsel with the approval of the Council and who shall serve at the pleasure of the corporation counsel.

"2. The assistant corporation counsel shall be an elector of the City of Norwich and an attorney admitted to practice in the State of Connecticut.

"3. The assistant corporation counsel shall have such duties as are assigned to him by the corporation counsel and during such time as the corporation counsel is temporarily absent or disabled he shall act in the place of the corporation counsel.

"4. The assistant corporation counsel shall be paid at the rate of $8,000.00 per annum for the first year 1970–1971."

can Home agreed to provide the plaintiff a defense, but reserved its right to refuse to pay the claim. The reservation of rights was based upon the language of the American Home policy that excluded from coverage an insured who was sued by his employer or an insured who was an elected public official or employee of a governmental body.

In October, 1985, the plaintiff learned that the city had purchased an insurance policy from the defendant that had been in effect on the date the malpractice action against him was instituted. The policy included as insureds "those persons who were, now or shall be duly elected or appointed officials or members or employees, paid or volunteer" of the city. Concluding that he was an insured under this policy, the plaintiff, on October 31, 1985, sent a letter to the defendant notifying it of the pending malpractice action against him. The notice letter requested that the defendant provide the plaintiff with a defense and indemnify him from any potential loss in the malpractice action. The defendant responded to the plaintiff's request by a letter dated November 12, 1985, in which the defendant refused to provide the plaintiff with insurance coverage, claiming, inter alia, that the plaintiff was not an "insured" under the terms of the policy.

The present action was initiated by the plaintiff in January, 1986, on the basis of the defendant's refusal to provide the plaintiff coverage under the policy.[2] The substitute complaint, dated December 1, 1986, consisted of two counts, the first alleging a breach of contract and the second alleging a breach of the duty of good faith and fair dealing. The case was tried to a jury that returned verdicts in favor of the plaintiff and

---

[2] In October, 1986, American Home settled the malpractice action on the plaintiff's behalf, paying $500,000 to the city of Norwich and agreeing to share with the city any recovery in the plaintiff's action against the defendant. In return for the settlement, the plaintiff assigned to American Home all of his rights arising out of the malpractice action.

awarded damages of $1,000,000 on the first count and $1,050,000 on the second count. The trial court rendered judgment accordingly.

On appeal, the defendant claims that the trial court erred in denying its motions for directed verdicts and for judgment notwithstanding the verdicts, because: (1) the plaintiff was not an insured under the terms of the policy; (2) the plaintiff's notice to the defendant of the malpractice action against him was deficient as a matter of law; (3) the evidence before the jury was insufficient to support its finding of bad faith on the part of the defendant; and (4) the evidence before the jury was insufficient to support the dollar amounts of the damage awards. We conclude that the plaintiff did not qualify as an insured under the terms of the policy. The trial court, therefore, erred in denying the defendant's motions for directed verdict on each of the two counts. In light of our disposition of the defendant's first claim of error, we need not address the other issues raised by this appeal.

The policy definition of an "insured" limited coverage under that policy to the city of Norwich "and those persons who were, now or shall be duly elected or appointed officials or members or employees, paid or volunteer, of the governing body of such commissions, boards or other units operating by and within an apportionment of the total operating budget . . . ." The defendant argues that the evidence presented at trial clearly demonstrated that the plaintiff was neither an "official" nor an "employee" of the city of Norwich, and, therefore, did not qualify as an insured under the terms of the policy.[3] We agree.[4]

---

[3] We note that the policy does not define the term "official"; nor does it provide a definition of the term "employee" beyond the following provision: " 'Employee' shall not include any person working on a retainer or contractual agreement."

[4] We note that, because we conclude that the plaintiff was not an insured under the express terms of the policy, we do not reach the question of

We turn first to the question of whether the plaintiff, who was appointed to the position of assistant corporation counsel by the Norwich city council, was an appointed "official." "We have said that '[t]he essential characteristics of a "public office" are (1) an authority conferred by law, (2) a fixed tenure of office, and (3) the power to exercise some portion of the sovereign functions of government. *Kelly* v. *Bridgeport,* 111 Conn. 667, 671, 151 A. 268 [1930]; Mechem, Public Officers § 1.' *Spring* v. *Constantino,* 168 Conn. 563, 568–69, 362 A.2d 871 (1975); *Housing Authority* v. *Dorsey,* 164 Conn. 247, 251, 320 A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973); see also *Tremp* v. *Patten,* 132 Conn. 120, 124-25, 42 A.2d 834 (1945); 63A Am. Jur. 2d, Public Officers and Employees § 5 (1984). 'An individual so invested is a public officer.' *Housing Authority* v. *Dorsey,* supra, 251." *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 198, 491 A.2d 1058 (1985); see also *Kinney* v. *State,* 213 Conn. 54, 61, 566 A.2d 670 (1989).

The defendant concedes that the position of assistant corporation counsel for the city of Norwich does possess two of the three essential characteristics required of a "public office." First, the position was created by ordinance, " 'and, assuming that the [city] council acted within the powers conferred upon it by the city charter, the office was one created by law.' *Kelly* v. *Bridgeport,* supra, 671." *Murach* v. *Planning & Zoning Commission,* supra, 199. Second, the ordinance provides that "during such time as the corporation counsel is temporarily absent or disabled [the assistant corporation counsel] shall act in the place of the corporation counsel." The assistant corporation

---

whether this policy was designed or intended solely to protect the city from damages owed to a third person, as the concurrence suggests, or also to protect the city from losses suffered directly.

counsel is thus invested by ordinance with the authority, under limited circumstances, to exercise that portion of the sovereign functions of government within the control of the corporation counsel. See *Kelly* v. *Bridgeport,* supra.

As the defendant argues, however, the position of assistant corporation counsel did not have a fixed tenure of office. " 'Public office embraces the idea of tenure and duration' and this view rests on the continuing and permanent nature of the office . . . . 63A Am. Jur. 2d, Public Officers and Employees § 6 (1984)." *Murach* v. *Planning & Zoning Commission,* supra. In this regard, we find it significant that the ordinance creating the position of assistant corporation counsel specifically provides that the assistant "shall serve at the pleasure of the corporation counsel." This provision clearly does not contemplate that the position be a "continuing and permanent" one. While it is true, as the plaintiff argues, that he was reappointed to the position by the city council every two years from 1974 through 1980, the fact remains that the plaintiff served "at the pleasure of the corporation counsel," not under a fixed tenure of office.[5] Therefore, because the position of assistant corporation counsel did not possess each of the three essential characteristics required of a "public office," the plaintiff was not an "official" of the city of Norwich.

We next consider whether the plaintiff was an "employee" of the city of Norwich. The defendant

[5] In *Kelly* v. *Bridgeport,* 111 Conn. 667, 670, 151 A. 268 (1930), we indicated in dictum that a fixed tenure of office was one that was "either fixed by law or enduring at the pleasure of the creating power." The position of assistant corporation counsel was not one with a fixed tenure of office even under that definition. The position was created by the Norwich city council. Pursuant to the express language of the ordinance adopted by the council, the holder of the assistant corporation counsel position served not at the pleasure of the creating power, but rather at the pleasure of the corporation counsel.

argues that the plaintiff, in his capacity as assistant corporation counsel, was not an employee, but rather was an independent contractor. We agree.

"The legal incidents of the relation between an employer and an employee or independent contractor are well established. *Lassen* v. *Stamford Transit Co.,* 102 Conn. 76, 79–80, 82, 128 A. 117 [1925]. 'In *Alexander* v. *R. A. Sherman's Sons Co.,* 86 Conn. 292, 297, 85 A. 514 [1912], we adopted the definition that "[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work." This definition has been amplified in subsequent cases but at no time has the basic principle been altered. See *Francis* v. *Franklin Cafeteria, Inc.,* 123 Conn. 320, 324, 195 A. 198 [1937]. . . . "The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work." *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 179, 15 A.2d 17 [1940]; see *Kaliszewski* v. *Weathermaster Alsco Corporation,* 148 Conn. 624, 628, 173 A.2d 497 [1961]; *Bourgeois* v. *Cacciapuoti,* 138 Conn. 317, 320–21, 84 A.2d 122 [1951]; *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 524, 28 A. 32 [1893].' *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 195–96, 292 A.2d 912 [1972]." *Spring* v. *Constantino,* supra, 573–74.

"The determination of general control is not always a simple problem. Many factors are ordinarily present for consideration, no one of which is, by itself, necessarily conclusive." *Bourgeois* v. *Cacciapuoti,* supra, 321. The plaintiff highlights the following evidence as indicative of the control exercised over him by the city. The trial testimony revealed that the plaintiff was hired to do the legal work assigned to him by the corporation

counsel. With respect to these assigned legal matters, the city council and corporation counsel directed the plaintiff to prosecute, defend or settle matters involving the city, and reviewed the services provided by the plaintiff. The testimony further revealed that the plaintiff was included on the city's payroll and that taxes and social security were withheld from his earnings. Moreover, the plaintiff was included in the city health and life insurance programs. We agree with the plaintiff that these factors, under certain circumstances, are characteristic of the relationship of employer and employee. These factors lose meaningful significance, however, in light of the testimony given at trial by the plaintiff.

The plaintiff admitted that the city did not provide him with office space or facilities in which he could perform the city's legal work; nor did the city control the plaintiff's work schedule. In fact, the plaintiff testified that the city "wouldn't have had the gall to impose such hours." Additionally, the plaintiff admitted that he serviced the legal needs of the city in the same way that he serviced the legal needs of his other clients. Given this testimony, it is clear that, while the result of the plaintiff's work may have been subject to the city's control, as with his other clients, the means and methods by which the plaintiff reached that result were not.[6] We conclude, therefore, that the plaintiff was not an "employee" of the city of Norwich.

---

[6] In contrast to the present case was the factual scenario presented in *Bieluczyk* v. *Crown Petroleum Corporation*, 134 Conn. 461, 58 A.2d 380 (1948). This court determined in *Bieluczyk* that an employer and employee relationship existed due to the following factors: the employee worked on the employer's premises; the employee was allowed to sell only the employer's products; the premises were subject to frequent visits by the employer's representatives who issued orders concerning the condition of the workplace and advised as to how sales might be increased; and those same representatives made other periodic visits to see that the workplace was kept open the required number of hours and that the orders given were carried out.

Because the plaintiff, in his position of assistant corporation counsel, was neither an "official" nor an "employee" of the city of Norwich, he did not qualify as an insured under the defendant's policy.[7] Accordingly, the defendant was entitled to a directed verdict on each count of the plaintiff's complaint.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment for the defendant on both counts.

In this opinion PETERS, C. J., SHEA and GLASS, Js., concurred.

CALLAHAN, J., concurring. I agree with the result. I believe, however, that the liability policy in question was solely for the purpose of protecting the city of Norwich, its officials and employees from damages to third parties caused by the negligence or malpractice of those officials and employees. I do not think that it was designed or intended to protect the city from the negligence or malpractice of its own agents. It is a strange liability policy, indeed, that protects the insured from itself. I would therefore find no coverage on that basis.

---

[7] The holding in this case is entirely consistent with our holding in *Norwich* v. *Silverberg,* 200 Conn. 367, 511 A.2d 336 (1986), in which we concluded that the defendants were not entitled to reimbursement from the city of Norwich under the provisions of General Statutes § 7-101a.