DURKIN VILLAGE PLAINVILLE, LLC *v.* ZONING BOARD OF APPEALS OF THE TOWN OF PLAINVILLE ET AL.
(AC 28362)

DiPentima, Lavine and Lavery, Js.

Argued January 2—officially released May 20, 2008

*David A. Estabrook*, with whom, on the brief, were *Robert A. Ziegler, Jeffrey M. Knickerbocker* and *Leslee B. Hill*, for the appellant (plaintiff).

*Robert A. Michalik*, for the appellee (named defendant).

*William T. Barrante*, for the appellee (defendant Jennifer Bartiss-Earley).

*Opinion*

LAVERY, J. The plaintiff, Durkin Village Plainville, LLC,[1] appeals from the judgment of the trial court dismissing its appeal from the decision of the defendant zoning board of appeals of the town of Plainville (board) granting the application of the defendant Jennifer Bartiss-Earley for a rear yard and side yard variance to permit reconstruction of an existing swimming pool and deck. On appeal, the plaintiff claims that it was improper for the court to uphold the decision of the board that a variance was warranted due to a claimed hardship on Bartiss-Earley. We conclude that the finding of a hardship was improper and, accordingly, reverse the judgment of the trial court.

---

[1] The plaintiff is the owner of land abutting the subject property.

The following facts are relevant to the plaintiff's appeal. In 2002, Bartiss-Earley purchased real property at 74 South Washington Street in the town of Plainville. At the time of this purchase, the property had a single-family residence with an attached deck and pool. The deck and pool had been constructed in 1994 by the predecessor in title under a permit by the town using a 1986 "mortgage survey" prepared by a registered land surveyor.[2] A more accurate A-2 classified survey was completed for Bartiss-Earley in September, 2003, about one year after she had purchased the property.[3] The A-2 survey indicated that the pool and deck were not in conformance with the zoning requirements. The property is in the R-11 zone. The town of Plainville's zoning regulations require that in an R-11 zone, a lot must be a minimum of 11,000 square feet, with ten foot side yard and thirty foot rear yard setbacks. The pool at issue is located five feet from the side yard and nineteen feet from the rear yard, and a portion of the deck is only twenty-six feet from the rear boundary.

[2] The category of a mortgage survey does not exist in the applicable code for Connecticut land surveyors and the survey itself does not claim to be as accurate as any of the categorized surveys within the code. Connecticut Association of Land Surveyors, LLC, Code of Recommended Practice for Standards of Accuracy of Surveys and Maps, 1977. The certification on this survey states that "this map is substantially correct, the structure is located as shown, and unless otherwise noted, does not violate the zoning regulations of the town of Plainville, Connecticut."

[3] Sections 20-300b-2 and 20-300b-11 (b) of the Standards for Surveys and Maps in the State of Connecticut, describes the type of surveys and the accuracy required for each classification. Connecticut Association of Land Surveyors, LLC, Standards for Surveys and Maps in the State of Connecticut, 1999, available at http://www.ctsurveyor.com/conn-code.htm (accessed 4/28/08). Earlier codes have described the A-2 survey as a "type of survey to be used in areas where density and other factors warrant a moderate degree of accuracy." Connecticut Association of Land Surveyors, LLC, Recommended Standards For Surveys and Maps in the State of Connecticut, 1984. There are a variety of other survey types with less degrees of accuracy than an A-2 survey. Standards For Surveys and Maps in the State of Connecticut, supra, § 20-300b-11 (b). The mortgage survey appears to be one of these less accurate types.

On October 26, 2005, Bartiss-Earley applied for a variance to allow the nonconforming side and rear yard setbacks and to rebuild and to maintain the aboveground pool and the attached deck. A public hearing was held on November 14, 2005. At the public hearing, Bartiss-Earley asserted that she wanted to keep "everything the exact same footprint and just replace it . . . ." She claimed a hardship because the town had granted a permit for the construction of the pool in 1994, so she stated that she should be allowed to keep the pool and deck as they existed at that time, and to repair or to replace them so they would not be in disrepair. She further claimed that she was "suffering" as a result of the building permit that was issued on the basis of the incorrect mortgage survey. Although Bartiss-Earley presented to the board the accurate survey with markings to indicate how much of the deck and pool are nonconforming, her purpose was to show only how her deck and pool would be altered if she had to comply with the rear and side yard setbacks.

The plaintiff's counsel attended this public hearing to oppose the granting of a variance. Particularly, the plaintiff argued that a finding of a hardship is necessary for the granting of a variance but that the hardship must be something that affects her land because of some "peculiar characteristic" or "topographical condition . . . ." The plaintiff offered to the board the site plan that previously had been approved by the board for the land surrounding Bartiss-Earley's parcel. This site plan shows that a road and a sidewalk were to be constructed adjacent to Bartiss-Earley's side boundary and that they would be legitimately constructed near her pool. The plaintiff further argued that this was a self-created hardship that did not justify the granting of a variance.

Once the public had been allowed the chance to speak regarding the application, one member of the board seconded the motion of another member to bring the

application to the table. The following colloquy then took place among three of the board members:

"Peter Autunno, Jr.: Any further discussion? [Board member Gail Pugliese], comments?

"Ms. Pugliese: Yes, I do feel that she has a hardship. She bought this property under, I don't know what you call it, false information, regarding the pool, thinking, and the fact that thinking it was conforming, that there was a permit taken out regardless of whether it was several years ago or not, this is a hardship that she unfortunately bought into. I understand . . . the development, but there's going to be a twenty foot barrier between the sidewalk and the back of her property. Twenty feet is, you know, quite a distance. I don't see any problem. I feel that she should be granted her request.

"Mr. Autunno: Mr. Bonola, any further comments?

"[Board member Robert] Bonola: I agree with the comments made, in addition to looking at the photographs here that you can't naturally see from the street, this looks like it's pretty well closed and, again, I don't think this is going to be any problem. Anybody going up and down this proposed new area, you're looking through the bushes . . . and I think whatever construction is going on there, currently, in my opinion, is the one causing the problem here. Yes, she bought this . . . knowing that the proper distances at the time were correct and she's here trying to correct that situation, so going forward for her, life will be a lot simpler. So, I see no problem with granting this request."

The three other members of the board stated that they agreed with the comments made. The board then voted unanimously to approve the application.

The plaintiff appealed from the board's decision to the Superior Court, claiming that the board acted illegally, arbitrarily, without discretion and in abuse of the

discretion vested in it by finding a hardship. In the court's memorandum of decision, it held that the board failed to state on the record its reasons for granting the variance and therefore determined that it must search the record for a basis of the board's decision. The court found that the board had substantial evidence that the variance would not substantially affect the comprehensive plan because the variance did not seek a change of use for the property. The court also found that the hardship was not self-created because it arose from conditions beyond the control of Bartiss-Earley and that the board was not persuaded that the deck and pool could have been reconstructed to be in conformance with the regulations. Ultimately, the court concluded that the board did not act unreasonably, arbitrarily or illegally and dismissed the appeal.

Following that decision, the plaintiff filed a motion for articulation, which the court denied. The plaintiff then filed the present appeal after this court granted its petition for certification. Additional facts will be set forth as necessary.

The plaintiff claims that the court's determination that the board properly found a hardship was in error because there was no evidence presented to justify a finding of hardship sufficient to grant a variance. Bartiss-Earley argues that the board did not abuse its discretion in finding a hardship and that the regulations affect her property in a manner different from how they affect the properties of others.[4] We agree with the

[4] Bartiss-Earley further claims that the situation presented a hardship that was created by her predecessor in title under the authority of a building permit that had been issued in reliance on an incorrect mortgage survey. She claims that the surveyor was an independent surveyor commissioned by a bank and, therefore, under *Osborne* v. *Zoning Board of Appeals*, 41 Conn. App. 351, 675 A.2d 917 (1996), she did not create the hardship and should be granted relief in the form of a variance. Initially, we note that recent case law holds that, at least in a boundary dispute, a purchaser could be found contributorily negligent for failing to obtain a current survey of a property before purchasing it. See *Kramer* v. *Petisi*, 285 Conn. 674, 940

plaintiff and, accordingly, reverse the judgment of the trial court.

To begin our analysis, we identify the standard of review and certain legal principles that guide our resolution of the issues before us. "Our standard of review when considering an appeal from the judgment of a court regarding the decision of a zoning board to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) *Hoffer* v. *Zoning Board of Appeals*, 64 Conn. App. 39, 41, 779 A.2d 214 (2001); see also *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 205–206, 658 A.2d 559 (1995).

---

A.2d 800 (2008). In *Kramer*, as in the present case, the surveys relied on by the purchasers were completed prior to the addition of fixtures to the property.

Beyond that, this case is distinguishable from *Osborne*. To begin, prior to the surveyor error in *Osborne*, there was already a nonconforming lot and, after the surveyor error, the nonconformity was decreased. More importantly, there was evidence presented in *Osborne* that the surveyor was an independent contractor and, therefore, the homeowner had very little control over his "means and methods of work . . . ." (Citation omitted.) *Osborne* v. *Zoning Board of Appeals*, supra, 41 Conn. App. 355. In the present case, the record is devoid of any indication of what kind of relationship existed between the surveyor and the predecessor in title. What further distinguishes the case here is that there was testimony in *Osborne* about the tightness of the lot and the inability to alter the nonconformity. Id., 354. Bartiss-Earley did not present any evidence that it was impossible to move the deck and pool to be in conformance with the zoning regulations.

The board, in fact, collectively stated its reasons for its decision as included previously. "Where a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [board's action] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] principle . . . applies where the [commission] has rendered a formal, official, collective statement of reasons for its action. . . . Thus, where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." (Citation omitted; internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513, 636 A.2d 1342 (1994); see also *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 142–43, 653 A.2d 798 (1995); *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162 n.4, 855 A.2d 1044 (2004); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.8, pp. 175–76.

A variance has been defined as the "authority granted to [an] owner to use his property in a manner forbidden by the zoning regulations." (Internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). Our Supreme Court has cautioned that "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised. . . . [U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges

until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted. . . . The power to authorize a variance is only granted for relief in specific and exceptional instances." (Citations omitted; internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 270–71, 588 A.2d 1372 (1991); see also *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 548, 684 A.2d 735 (1996).

Section 1300 of the Plainville zoning regulations cites General Statutes § 8-6 (a) and specifies that the board has the "powers and duties . . . [t]o determine and vary the application of these Zoning Regulations, solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is located, a literal enforcement of these Regulations would result in exceptional difficulty or unusual hardship. Any such variance to these Zoning Regulations shall be in harmony with their general purpose and intent, and shall be made with due consideration of conserving the public health, safety, convenience, welfare and property values." Plainville Zoning Regs., § 1300.

It is well established that "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." (Internal quotation marks omitted.) *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 330, 834 A.2d 801 (2003). "Disappointment in the use of property does not constitute exceptional difficulty or unusual hardship . . . ." (Citation omitted.) *Krejpcio* v. *Zoning Board of Appeals*, 152 Conn. 657, 662, 211 A.2d 687 (1965). Additionally, we have stated that "[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance.

. . . [T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances." (Citations omitted; internal quotation marks omitted.) *Gangemi* v. *Zoning Board of Appeals*, 54 Conn. App. 559, 564, 736 A.2d 167 (1999), rev'd on other grounds, 255 Conn. 143, 763 A.2d 1011 (2001); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 137. "[T]he hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 327, 387 A.2d 542 (1978). The long-standing law in Connecticut is that "[w]here the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. Where, however, the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, a subsequent purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance." *Kulak* v. *Zoning Board of Appeals*, 184 Conn. 479, 482, 440 A.2d 183 (1981), citing *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 300–301, 429 A.2d 883 (1980). In this case, there is no new zoning ordinance. The nonconformity at issue was created by the predecessor in title.

In her application for a variance, Bartiss-Earley claimed a hardship because a permit had been issued in 1994 for the pool and deck, and a variance would allow the pool and deck to be rebuilt in its present dimensions or improved and repaired in the future. At the public hearing, Bartiss-Earley stated: "I feel that this is definitely a hardship to me, as there was a prior permit that was issued for this under false pretenses. I would like to make sure that the pool and deck do

conform to the regulations, which is why I am here, to apply for the variance." When asked if in the future if she planned to make the deck "a little bit shorter to conform?" Bartiss-Earley responded, "Well, my plans were to keep everything the exact same footprint and just replace it, not to change it, extend it any farther . . . ." She further stated: "I feel that it is a hardship to me because the town already granted a permit for that in 1994, so, if it was granted in 1994, then why should I not be grandfathered to [be] allow[ed] to continue to have that since it's existing, that it's my right as a property owner to maintain that for the surrounding neighbors not to have to look at something that is in disrepair, and currently the deck is in disrepair?"[5] During this public hearing, the plaintiff pointed out that Bartiss-Earley had not presented evidence of a hardship because she did not demonstrate that her land was different from anyone else's land. Bartiss-Earley made no further comments.

The claimed hardship arises from the improperly granted building permit in 1994 that was based on the inaccurate mortgage survey presented by Bartiss-Earley's predecessor in title. Our courts "have never held that such an administrative error creates a legal hardship . . . ." *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 211. Bartiss-Earley ultimately failed to meet her burden to show how her property was uniquely situated so that application of the regulations to the property created an unusual hardship. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 9:3, p. 189. She failed to show that there was no way for her to reconstruct a

---

[5] After this comment, a board member went on to explain that under the regulations, Bartiss-Earley could repair the nonconforming part of the deck and the pool without a variance but that if she took the deck and pool out completely without a variance, she would have to conform the newly built deck and pool to the regulations.

pool and deck on her property to conform with the regulations, and she also failed to show that her predecessor in title did not create the nonconformity. Because Bartiss-Earley failed to demonstrate a legally cognizable hardship, the board acted improperly in granting the variance. We therefore sustain the plaintiff's appeal.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion DiPENTIMA, J., concurred.

LAVINE, J., concurring. I agree with the decision reached by the majority, but I write separately to clarify the hardship claimed by the defendant Jennifer Bartiss-Earley. I also believe that Osborne v. Zoning Board of Appeals, 41 Conn. App. 351, 675 A.2d 917 (1996), should not be relied on in the analysis of the claims in this appeal.

Some of the facts cited by the majority deserve amplification to place the hardship claimed by Bartiss-Earley in perspective. The photographs of the swimming pool in the record demonstrate that the swimming pool is an aboveground pool, not one built in the ground. In her application for a hearing, Bartiss-Earley requested a variance for an existing pool and deck. In response to the question regarding the specific hardship claimed, she wrote: "[A] permit was issued for the pool [and] deck in 1994 despite the fact that they did not conform to the side and rear yard requirements.[1] A variance

---

[1] Reference is made to a 1986 mortgage survey, which is purported to be the survey used when the prior owner of the property applied for the building permit to construct the deck and pool in 1994. The registered land surveyor certified with respect to the map to the mortgagee bank and the title insurance company that "this map is substantially correct, the structure is located as shown, and unless otherwise noted, does not violate the zoning regulations of the town of Plainville." As the majority makes clear in footnote 2, there are different categories of surveys. See, e.g., Kramer v. Petisi, 285 Conn.

would allow the deck to be rebuilt in its present dimensions with respect to the rear yard and for future improvements/repairs to the pool with respect to the rear and side yard." During the hearing, Bartiss-Earley expressed her opinion that she was faced with a hardship because a 1994 building permit "was issued for this under false pretenses." Members of the defendant zoning board of appeals of the town of Plainville (board) asked Bartiss-Earley to clarify why the variance was being requested at that time. When informed that Bartiss-Earley was seeking the variance to repair the existing deck, members of the board explained that if they granted a variance pursuant to her application of October 26, 2005, she would have to apply for a building permit to repair or to replace the swimming pool within six months or she would have to return at a later time to request a variance to repair or to replace the pool. The board granted the application for the variance on the ground that the nonconformity "is a hardship that she unfortunately bought into." Although the result seems somewhat harsh at first blush, I agree with the majority that under the controlling law, Bartiss-Earley's reliance on the 1994 building permit is not a hardship for which a variance should be granted.[2]

In their briefs, the parties cite and offer various arguments with respect to a 1996 decision of this court, *Osborne* v. *Zoning Board of Appeals*, supra, 41 Conn. App. 351. I respectfully disagree with the reasoning of

674, 683–84, 940 A.2d 800 (2008) (comparative negligence applied to claim of negligent misrepresentation where purchaser failed to obtain new survey).

[2] At the hearing Bartiss-Earley represented in part, "I'm requesting this variance to allow me in the future to replace or repair the pool, as it probably over time will need replacement or repair, as well as to, in the near future, replace the existing deck with the existing footprints as they are depicted on the map provided to you." The map submitted by Bartiss-Earley demonstrates that remedying the nonconformity might be described more accurately as an inconvenience than a hardship if the above the ground pool needs to be replaced.

*Osborne* and the manner in which the majority here seeks to distinguish it. See footnote 4 of the majority opinion. The general rule in Connecticut is that a variance will not be granted if the hardship is self-created, including hardships created by the applicant's predecessor in title. As I construe the history of this rule, I believe that it is founded in the law of agency. The independent contract doctrine, relied on in *Osborne*, has its roots in employment and insurance, not zoning, law. Moreover, a surveyor is a professional, one who is required to pass rigorous examinations and to obtain a license from the state.

The hardship rule as related to zoning variances has been a consistent part of our jurisprudence as far back as 1931. "Disadvantage in property value or income, or both, to a single owner of property, resulting from application of zoning restrictions, does not, ordinarily, warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship. Financial considerations alone . . . cannot govern the action of the board. They are bound to take a broader view than the apparent monetary distress of the owner. Otherwise, there would be no occasion for any zoning law." (Internal quotation marks omitted.) *Thayer* v. *Board of Appeals*, 114 Conn. 15, 22, 157 A. 273 (1931); see also *Devaney* v. *Board of Zoning Appeals*, 132 Conn. 537, 542, 45 A.2d 828 (1946). "Where the basis upon which the claim of hardship rests is financial in nature, there rarely can be justification for a variance. . . . [T]he hardship, if such it may be called, did not originate in the ordinance. The defendants have brought it on themselves." (Citations omitted.) *Celentano* v. *Zoning Board of Appeals*, 136 Conn. 584, 587, 73 A.2d 101 (1950).

"By its very definition, a variance is granted with respect to a particular piece of property; it can be

enjoyed not only by the present owner but by all subsequent owners. . . . It follows then that a variance is not a personal exemption from the enforcement of zoning regulations. It is a legal status granted to a certain parcel of realty without regard to ownership. It is for this reason that the rule is well established that the financial loss or the potential of financial advantage to the applicant is not the proper basis for a variance." (Citation omitted.) *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972).

A factual situation somewhat similar to the one here was presented in *Misuk* v. *Zoning Board of Appeals*, 138 Conn. 477, 86 A.2d 180 (1952). In that case, the property owner sought to construct a house with an attached garage on a lot in Meriden. Id., 478. "Preparatory to actual construction, [the property owner] and his contractor laid out that part of the foundation which was farthest away from the plaintiff's property. In doing so, they measured from a pipe, set in the ground, erroneously assumed by them to mark the southerly boundary of the lot. As a matter of fact, the correct boundary was a few feet farther to the south." Id., 478–79. Our Supreme Court concluded that the zoning board improperly had granted a variance, stating: "It must be borne in mind that the predicament which arose did not originate in the ordinance or in other conditions beyond the control of the [property owner]." Id., 481.

In *Highland Park, Inc.* v. *Zoning Board of Appeals*, 155 Conn. 40, 229 A.2d 356 (1967), our Supreme Court had occasion to decide a case in which a dwelling house was constructed within the setback. "The variance was sought on the grounds that the position of the house on lot 19 was due to an error made either by the surveyor or by the foundation contractor employed by the corporation . . . ." Id., 42. The court concluded that "any present hardship in the situation is due to the property owner's own error, or the error *of those employed* by

the owner, and does not arise from the application of the zoning regulations themselves." (Emphasis added.) Id., 43. This conclusion by our Supreme Court brings me to my disagreement with *Osborne* v. *Zoning Board of Appeals*, supra, 41 Conn. App. 351.

In *Osborne*, this court reversed the denial of a zoning variance where the foundation of a dwelling house in Guilford had been placed within the setback. This court concluded that the surveyor, who was blamed for the error, was an independent contractor. "The surveyor testified before the board that he was retained by the *architect*, and not by the defendant property owner, to mark the offset for the building, and that the surveyor incorrectly placed one of the stakes 0.6 of a foot, seven inches, closer to the west boundary than it should have been. The architect also testified that because of the 'tightness' of the lot, *he*, not the defendant [property owner], took the precaution of hiring the surveyor to set corner stakes before construction. Nowhere does it appear in the record that the surveyor was other than an independent contractor or that the surveyor was retained by the defendant." (Emphasis in original.) Id., 354. In my view, the court's reasoning in *Osborne* is unpersuasive. Irrespective of who hired the surveyor, the architect was the property owner's agent, and so, derivatively, was the surveyor.

This court offered in further support of its conclusion that the owner of the Guilford property was not bound by the surveyor's mistake and that there was no evidence that "the surveyor was other than an independent contractor in control of his own means and methods of work, except to the result of his work; *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 697, 651 A.2d 1286 (1995) . . . ." (Internal quotation marks omitted.) *Osborne* v. *Zoning Board of Appeals*, supra, 41 Conn. App. 355. *Tianti* was an action brought by the commissioner of labor pursuant to General Statutes

§ 31-72 on behalf of two of the defendant's real estate agents for unpaid commissions. *Tianti* v. *William Raveis Real Estate, Inc.*, supra, 694. *Tianti* relied on the definition of an independent contractor from cases concerning malpractice insurance; see *Silverberg* v. *Great Southwest Fire Ins. Co.*, 214 Conn. 632, 639, 573 A.2d 724 (1990); and unemployment compensation pursuant to General Statutes § 31-270. See *Latimer* v. *Administrator*, 216 Conn. 237, 248, 579 A.2d 497 (1990). *Tianti* and the cases cited therein arise out of employment and insurance law. The situation with regard to a real property owner who engages a surveyor to perform a task is not an employment situation to which employment and insurance law pertains.

Moreover, a property owner may hire, retain or enter into a contract with a surveyor to perform a particular service, much the same way that the property owner may hire, retain or enter into a contract with a builder to construct a fixture on the land. See *Highland Park, Inc.* v. *Zoning Board of Appeals*, supra, 155 Conn. 43. Both the surveyor and the builder in all likelihood possess skills the property owner does not have, and their work must be self-directed. A surveyor is a professional subject to regulations of the profession and the laws of this state. See General Statutes § 20-299 (2). As such, a surveyor generally will not be under the control of the landowner who engages him or her. Although a surveyor may go about doing the survey according to his or her own methods, he or she nonetheless was employed by the owner of real property. See General Statutes § 20-299 (2). If the owner of property relies on the surveyor's work, he or she ratifies the work, and the property owner and his or her successors in title should not be permitted to disavow errors in the survey, if any, on the ground that the surveyor was an independent contractor.

For these reasons, I believe the reasoning informing the *Osborne* decision is questionable and that it should not be relied on in the analysis of the claims on appeal. Otherwise, I concur in the opinion of the majority.