HUGH R. CURRAN, EXECUTOR (ESTATE OF
ELEANOR M. CURRAN) *v.* ZONING BOARD
OF APPEALS OF THE CITY OF
MILFORD ET AL.
(AC 30051)

DiPentima, Lavine and Hennessy, Js.

Argued April 17—officially released October 6, 2009

*Hugh R. Curran,* with whom was *George F. Martelon, Jr.,* for the appellant (plaintiff).

*John W. Knuff*, with whom was *Catherine A. Cuggino*, for the appellees (defendant Maura Cullen Visconsi et al.).

*Opinion*

HENNESSY, J. The plaintiff, Hugh R. Curran, executor of the estate of Eleanor M. Curran, appeals from the judgment of the trial court dismissing his appeal from the decision of the zoning board of appeals of the city of Milford (board),[1] granting a variance for the construction of a home on property owned by the defendants Maura Cullen Visconsi, Charles R. Cullen IV and Heather Cullen (Cullens). On appeal, the plaintiff claims that the court improperly found that the record provides substantial evidence for a finding of hardship.[2] We agree and conclude that the finding of hardship was improper and, accordingly, reverse the judgment of the trial court.

The following facts are relevant to the plaintiff's appeal. The Cullens are the record owners of real property at 175 Third Avenue in Milford. The plaintiff is the adjoining landowner with property at 173 Third Avenue. The Cullens hired an architect to plan a demolition of the existing home on the property. The house predated the Milford zoning regulations and, at the present time,

---

[1] The board was named as a defendant at trial but is not a party to this appeal.

[2] The plaintiff also challenges the court's conclusion that review of each separate challenge to the board's decision would exceed the court's authority and that the record provides substantial evidence to support the board's decision. Because our resolution of the plaintiff's first claim is dispositive of his appeal, we need not address the plaintiff's other claims. See *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 500 n.6, 876 A.2d 1148 (2005).

The Cullens claim that because they are proposing to reduce the existing nonconformities, there is an independent ground for affirming the decision of the board. According to the Cullens' architect, the proposed building was within the existing footprint. The record is clear, however, that the proposal was to extend the footprint in part, and, therefore, the Cullens do not present sufficient evidence of reducing the nonconformity. We accordingly reject this claim.

is a legal nonconforming use. The intention was to "construct a new home basically within the footprint of the existing house." The lot itself is nonconforming because the width is thirty-nine feet rather than the required width of seventy feet and the depth is 99.8 feet rather than the required 100 feet. On April 20, 2007, the Cullens filed an application to the board for a variance requesting permission to: (1) reduce the front yard setback from twenty-five feet to twenty-one feet; (2) reduce the right side setback from ten feet to 2.5 feet and the left side setback from ten feet to 8.5 feet; (3) increase building coverage from 35 percent to 36.8 percent; (4) increase lot coverage from 50 percent to 58.4 percent; and (5) build a twenty-four inch roof overhang.

The board held a public hearing on the application on May 8, 2007. At the meeting, the Cullens' architect argued that most of the houses in the neighborhood were nonconforming but that the Cullens were trying to stay within the footprint, except for one corner of the proposed house that they would square off. The architect also indicated that the proposed house would probably be the same height as the existing house but, as designed, was taller. At the hearing, four people spoke in opposition, including the plaintiff. The first to speak was Alcine Panton, who spoke on behalf of the Laurel Beach Association (association) to oppose the application in its entirety. She argued that the Cullens had not even tried to demonstrate any hardship and that there was no attempt to reduce the nonconformity but, instead, to increase it. Next to speak was Eric Twombly, who lived across the street from the Cullens. He echoed the concerns of Panton and additionally argued that the association was a planned community founded in 1899 and that he was concerned that such a large structure would alter the appearance of the entire neighborhood and could lower the property values of the other homes.

The plaintiff spoke and reiterated the board's duty to try and bring the nonconforming home into compliance, if possible. He argued that there was no unusual difficulty or any unnecessary hardship within the meaning of the statutes. He raised the issue of the twenty-four inch roof overhang, claiming that, on the right side, where the Cullens were requesting a two and one-half foot setback, the overhang would come within one-half foot of the property line. Both the plaintiff and Panton discussed drainage issues in the association's area, and the plaintiff argued that with such a small setback, his property would be adversely affected. Last to speak was the property owner to the left of the Cullens' property, Mary Beth Charbonneau. She was opposed to the size of the house in general. The architect, in rebuttal, claimed that the hardship was clear because the Cullens' lot was a nonconforming lot.

The board closed the public hearing. During the closed portion of the meeting, the board approved the Cullens' variance application. "The reason for approval is [that] the applicant's proposed house will be keeping within the existing footprint. . . . [One member] added [that] the character of the neighborhood will be kept." The board published notice of the approval on May 11, 2007, in the New Haven Register.

The plaintiff appealed from the board's decision to the Superior Court, claiming that the board acted illegally, arbitrarily, unreasonably and in abuse of the discretion vested in it by approving the requested variance because no hardship had been shown and the decision was contrary to the Milford zoning regulations. In its memorandum of decision dated March 14, 2008, the court cited the reasons for granting the variance, which were that the planned structure was within the existing footprint and the variances that were already in place. The court noted that the architect further claimed that

the structure would keep the character of the neighborhood. The court declined to consider the plaintiff's claims separately but found, as a whole, that "[t]he decision of the board is supported by substantial evidence in the record and that due to the unique nature of complete nonconformance [in] that section of the city, the record provides substantial evidence for a finding of hardship." The court dismissed the plaintiff's appeal. The plaintiff filed the present appeal after this court granted his petition for certification.

On appeal, the plaintiff claims that the court's conclusion that the record provides substantial evidence for a finding of hardship was improper. The Cullens argue that the evidence of nonconformity to the zoning regulations is substantial enough to find hardship. We agree with the plaintiff.

We begin by setting forth the applicable standard of review. "We must determine whether the trial court correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion." *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 205–206, 658 A.2d 559 (1995). "In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board." (Internal quotation marks omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 559–60, 916 A.2d 5 (2007). The burden of proof to demonstrate that the

board acted improperly is on the plaintiff. *Bloom* v. *Zoning Board of Appeals*, supra, 206. As our Supreme Court has concluded, "when a zoning board has given a formal, official collective statement of reasons for its actions, the scope of our review is limited to determining whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) *Rural Water Co.* v. *Zoning Board of Appeals*, 287 Conn. 282, 294–95, 947 A.2d 944 (2008).

A variance has been defined as the "authority granted to [an] owner to use his property in a manner forbidden by the zoning regulations." (Internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). Our Supreme Court has cautioned that "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised. . . . [U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town-and-city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted. . . . The power to authorize a variance is only granted for relief in specific and exceptional instances." (Citations omitted; internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 270–71, 588 A.2d 1372 (1991); see also *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 548, 684 A.2d 735 (1996).

It is well established that "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." (Internal quotation marks omitted.) *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 330, 834 A.2d 801 (2003). "Disappointment in the use of property

does not constitute exceptional difficulty or unusual hardship . . . ." (Citation omitted.) *Krejpcio* v. *Zoning Board of Appeals*, 152 Conn. 657, 662, 211 A.2d 687 (1965). Additionally, we have stated that "[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. . . . [T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances." (Citations omitted; internal quotation marks omitted.) *Gangemi* v. *Zoning Board of Appeals*, 54 Conn. App. 559, 564, 736 A.2d 167 (1999), rev'd on other grounds, 255 Conn. 143, 763 A.2d 1011 (2001); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 137. "[T]he hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 327, 387 A.2d 542 (1978). Accordingly, our Supreme Court has interpreted General Statutes § 8-6 (a) (3) to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 368, 537 A.2d 1030 (1988); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 9:2, p. 239.

To begin, the board made no finding of a hardship. Even if the board had found for the Cullens on their

claimed hardship of nonconformance, it would not suffice to grant them a variance because they made no showing that the claimed hardship was different in kind from others in the zoning district. The board's formal rationale for approving the variance was that "the applicant's proposed house will be keeping within the existing footprint." This rationale was arbitrary and illegal not only because of the lack of a finding of hardship, or even the failure to address hardship, but also because the record presented to this court does not support this finding. The architect herself stated that the intention was to "construct a new home *basically* within the footprint of the existing house." (Emphasis added.) She later stated that the new house would be on "essentially" the same footprint. The record is clear that the building plan is to narrow the home in some parts but to extend it from the existing footprint in the back corner. There was also no evidence presented that a home could not be built in keeping with the zoning regulations applicable to this property. Because "[d]isappointment in the use of property does not constitute exceptional difficulty or unusual hardship"; *Krejpcio* v. *Zoning Board of Appeals*, supra, 152 Conn. 662; the Cullens have not shown an exceptional difficulty or an unusual hardship. The granting of the variance cannot stand.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other judges concurred.